JOHN T. HAMBLETON, ET AL., Appellants, v. G. H. JAMESON, S. Y. EGGERT, Appellees. F. M. RICE, W. R. HOWERTON, Defendants and Appellants.

**Specific performance:** TITLE: EVIDENCE. In this action for specific
1 performance of a contract to convey land the evidence is reviewed at length and held to show that the vendor had no title or interest in the property at the time of making the contract.

**Same:** READINESS TO PERFORM: INTERVENING EQUITIES: DENIAL OF
2 DECREE. To entitle the purchaser of land to specific performance of his contract, even though time was not the essence of the agreement, it must appear that he was ready, willing and able to perform the contract according to its terms; and if other equities arise growing out of his failure or neglect to perform specific performance will be denied him.

**Same:** ABANDONMENT: EVIDENCE. The evidence in this action is also
3 held to show an abandonment of the contract on the part of the purchasers.

**Same:** EQUITABLE ESTOPPEL. Where plaintiffs, who had contracted to
4 purchase land to which their vendor held simply a contract of sale

from the owner, refused to make their payments until the vendor had assigned his interest in the contract to an innocent purchaser, they were not thereafter entitled to specific performance; especially where they had defeated an action for damages for breach of the contract on the ground that their vendor had no title.

**Same:** JOINT CONTRACT: ENFORCEMENT. Where two persons contracted to purchase land and one absolutely abandoned and refused to perform, the vendor was under no obligation to accept notes of the other in performance of the contract, even though the party offering the notes was an assignee of the defaulting purchaser.

*Appeal from Wright District Court.*—HON. C. G. LEE, Judge.

WEDNESDAY, NOVEMBER 19, 1913.

ORIGINALLY this was an action to quiet title. Something like a year after it was commenced, plaintiff Hambleton alone filed an amended and substituted petition, whereby he converted it into one for the specific performance of a contract for the sale of real estate entered into between one F. M. Rice, party of the first part, and plaintiff Hambleton and one W. R. Howerton (now a defendant), parties of the second part. When the petition was filed, defendant Jameson was in possession of the land, claiming to be the owner thereof, and relief was asked against him. It was alleged that Howerton had assigned all his interest in the contract to the plaintiff, and plaintiff alleged readiness and ability to perform the contract on his part. Afterwards Howerton filed an answer, admitting the allegation of the petition and joined with plaintiff in the relief asked. Rice answered the petition, admitting the allegations thereof, and asking in the event specific performance was awarded that he have a money judgment; part of his answer being a cross-bill. Eggert filed an answer in which he admitted having made a contract, for the sale of a part of the land, with Rice which was assigned to Jameson; alleged that he sold to Jameson without any knowledge of plaintiff's claim, taking a mortgage back for $10,000 which he asked to have protected. He further pleaded that Jameson paid for

the land according to his agreement, and he asked that Jameson be protected. Jameson answered by a general denial and further pleaded a purchase of the lands in good faith and for value. He also averred that he had made valuable improvements upon the land in good faith, amounting to more than $6,000, and had executed a mortgage upon a part thereof, and that plaintiff and Howerton had never offered to reimburse him therefor, or to do anything to protect him. He also averred that Rice, with whom plaintiff and Howerton made their contract, never had acquired any interest in the lands which he could convey, because plaintiff and Howerton failed, neglected and refused to perform their contract with Rice, and further pleaded that they had abandoned, waived, and repudiated their contract with Rice and refused to perform the same. He further averred that Rice had no title to any of the lands when he made his contract with plaintiff and Howerton, and that he had nothing to sell and convey to them, which fact they well knew at the time they entered into their contract with him; and, finally, averred that there was no mutuality of contract between plaintiff and Howerton and Rice and that plaintiff cannot for this reason specifically enforce it. Plaintiff filed replies to these several answers, which, so far as material, will be referred to during the course of this opinion. The pleadings are very voluminous and, with their exhibits, cover more than thirty-six closely printed pages of the abstract. Upon the issues joined, the case was tried to the court, resulting in a decree dismissing the plaintiff's petition, and the cross-petitions of Rice and Howerton, and they each and all appeal. *Affirmed.*

*Ira W. Anderson* and *Nagle & Nagle,* for appellants.

*C. F. Peterson* and *Birdsall & Birdsall,* and *J. H. Scales,* for appellees.

DEEMER, J.—As already indicated, the pleadings are very

voluminous and the facts somewhat complicated. The issues
are really between Hambleton, Howerton, and Rice, on the
one side, and Jameson and Eggert, on the other; although
Eggert really claims under Jameson. Stated as briefly as may
be, the facts are substantially as follows:

Prior to the year 1909, S. Y. Eggert and Helen Pratt were
the owners of the 864 acres of land in controversy, situated in
Wright county, Iowa. These lands were valued at $48,000,
and on September 9th, of that year, Rice, who had no right,
title, or interest therein, but who knew of their selling price,
entered into a contract with Hambleton and Howerton to sell
them the property for a sum named, and as part payment of
the purchase price Rice received from them the sum of two
dollars. This contract reads as follows:

Article of Agreement. This article of agreement made
and entered into on this 9th day of September, 1909, by and
between F. M. Rice of Dows, Wright county, Iowa, party of
the first part, and W. R. Howerton and J. T. Hambleton of
Des Moines, Iowa, parties of the second part, witnesseth:
That the party of the first part agrees to and does sell to the
parties of the second part the following described real estate
situated in Wright county, Iowa, to wit: The north half of
section No. 14, township No. 90, range No. 24, except 96 acres
as in accordance with the meander of the lake on the northwest
corner of the above tract to be conveyed containing 224
acres more or less according to the survey. Also the south
half of section No. 14, township No. 90, range No. 24, con-
taining 320 acres, also the west half of section No. 23, town-
ship No. 90, range No. 24, containing 320 acres, making a
total amount of acres in said tracts to be conveyed 864 accord-
ing to the government survey thereof for the sum of
$48,000.00, the same to be paid for in the following manner:
$2.00 cash in hand on the execution of this contract, the
receipt of which is hereby acknowledged and $2,998.00 in
thirty days when abstracts are furnished showing that the
title will be good and $7,000.00 on or before March 1st and at
that time deed to be furnished and mortgage taken back on
said land for $10,000.00 on the 224-acre tract and $28,000.00
on the 640-acre tract, making a total in mortgages of $38,-

000.00, the same to draw 5 per cent annual interest and to
be payable on or before ten years, except $8,000.00 of the
$24,000.00 shall be due in five years.   The above payments
as specified together with the mortgages is to be in full pay-
ment of said amount.  Second party assumes four-tenths
of ditch tax amounting to $1,216.24 with interest at 6 per
cent from January, 1910, and first party is to furnish abstracts
showing good and merchantable title free from all incum-
brance.   This contract to be binding upon the parties hereto,
their heirs, executors, administrators and assigns and to be
fulfilled at the Farmers' Exchange Bank, Dows, Iowa.   For
the faithful performance of the above covenants and agree-
ments witness our signatures:   F. M. Rice.   W. R. Howerton.
J. T. Hambleton.

On the back of the contract appears the following assign-
ment:

For value received I hereby assign all my right and
interest in and to the within contract to J. T. Hambleton
without recourse on me.   [Signed]  W. R. Howerton.

Thereafter and on the 11th day of the same month, the
following contract was entered into between Pratt and Rice:

This contract made this 11th day of September, 1909,
by and between Helen Portia Pratt of Indianapolis, Indiana,
and F. M. Rice of Dows, Iowa, witnesseth: That in con-
sideration of the sum of $32,950.41 to be paid as hereinafter
stated and other covenants herein contained, the said Helen
Portia Pratt hereby agrees to sell and convey unto the said
F. M. Rice and to his heirs or assigns the following described
real estate, to wit: The south half of section No. fourteen (14)
and the west half of section No. twenty-three (23), all in
township No. 90, north, range No. 24, west of the 5th P. M.
Deed to said land to be made as hereinafter provided to said
F. M. Rice or W. R. Howerton and J. T. Hambleton, if
desired by said Rice.   Said land to be conveyed by said Helen
Portia Pratt on March 1, 1910, by good and sufficient deed
and free from all liens and incumbrances, except the drain-
age taxes assessed against said land which he, the said Rice

or his assigns is to assume and agrees to pay. Said Helen Portia Pratt also agrees to furnish abstract of title to said land showing good title thereto. In consideration whereof the said Rice agrees to pay $1,000.00 within thirty days from the date hereof, upon delivery to him of abstract showing good title, $3,950.41 on March 1, 1910, and on delivery of deed to execute his notes for the sum of $28,000.00, $8,000.00 to be payable on or before five years from March 1, 1910, and $20,000.00 on or before ten years from March 1, 1910, at five (5) per cent. per annum, payable annually, together with a first mortgage securing the same on all the above-described land. It is further understood that, if so desired, deed shall be made to said W. R. Howerton and J. T. Hambleton upon payment being made as herein provided and upon the execution by them of the notes and mortgages herein provided for. It is further understood and agreed that time is the essence of this contract and that, upon failure to pay any of the installments of purchase price as herein provided, the vendor may forfeit this contract by serving notice as provided by the law of the state of Iowa, and shall retain all payments made hereon. F. M. Rice. Helen Portia Pratt.

And upon the back of this contract is the following indorsement:

Dows, Iowa, October 14, 1909. For valuable consideration I hereby sell and assign to G. H. Jameson all my right, title and interest in and to the within contract. [Signed] F. M. Rice.

On the 12th day of August, 1909, Eggert and Rice made a contract, which is as follows:

This agreement, made this 12th day of August, A. D. 1909, between S. Y. Eggert of the county of Hardin and state of Iowa, party of the first part, and F. M. Rice of the county of Wright and state of Iowa, of the second part, witnesseth: The party of the first part hereby agrees to sell to the party of the second part, on the performance of the agreements of the party of the second part, as hereinafter mentioned, in fee simple, clear of all liens and incumbrances

whatever, by a good and sufficient warranty deed, the real estate situated in the county of Wright and state of Iowa, to wit: The north fractional one-half of section number fourteen (14) in township number ninety (90), north, range number twenty-four (24), west of the fifty principal meridian, containing two hundred twenty-four (224) acres, more or less, according to government survey. This sale is made subject to the result and outcome of a certain action in the district court of Wright county, Iowa, wherein W. L. Watson is plaintiff and Fred Poncin et al. are defendants, appealed to the Supreme Court of Iowa, and second party shall in whole accept result of said suit and first party shall pay all the costs of said suit, for the sum of twelve thousand eight hundred eighty ($12,880.00) dollars, payable as hereinafter mentioned. And the said party of the second part in consideration of the premises hereby agrees to and with the party of the first part to purchase all his right, title and interest in and to the real estate above described for the sum of twelve thousand eight hundred eighty dollars, and to pay said sum therefor to the party of the first part, his heirs or assigns, as follows: Five hundred ($500.00) dollars on the execution of this agreement, and the party of the first part hereby acknowledges receipt of the same. Twelve thousand three hundred eighty dollars in payments as follows, to wit: First payment, first day of March, 1910, $2,380.00. Second payment—the balance of ten thousand dollars ($10,000.00) to be secured by first mortgage on said real estate due in ten years from March 1, 1910, and bearing interest at the rate of 5 per cent. per annum, payable annually, nonpayment of interest when due to cause the whole sums to become due, maker of note and mortgage to have option of paying $100.00 or any multiple thereof on any interest-paying day. With interest from March 1, 1910, at the rate of 5 per cent. per annum on all such sums as shall remain unpaid until all is paid, payable from March 1, 1910. And the party of the second part shall also annually pay all taxes and assessments that may accrue on said property as they become due or before they become delinquent and including the tax for the year 1910. And it is expressly agreed by and between the parties hereto that the time and times of payment of said sums of money, interest and taxes as aforesaid is the essence and important part of the contract; that if default is made of any of the payments or agreements above mentioned to be

performed by the party of the second part, in consideration of the damage, injury and expense thereby resulting or that may be incurred by or to the party of the first part thereby, this agreement shall be void and of no effect and the party of the second part shall have no claim in law or equity against the party of the first part nor to the above-mentioned real estate nor any part thereof, and any claim, or interest, or right, the party of the second part may have hereunder up to that time by reason hereof or of any payments and improvements made hereunder shall on all such default cease and determine and become forfeited without any declaration of forfeiture re-entry or any act of the party of the first part. And if the party of the second part or any other person or persons shall be in possession of said real estate or any part thereof, he or they will peaceably remove therefrom, or in default thereof he or they may be treated as tenants holding over unlawfully after the expiration of a lease and may be ousted and removed as such. But if such sums of money, interest and taxes are paid as aforesaid, promptly at the times aforesaid, the party of the first part will, on receiving said money and interest, execute and deliver at his own costs and expenses, a warranty deed of said premises as above agreed. And the party of the first part, upon delivering said deed, will furnish an abstract of title, showing title to said premises to be in him in fee simple. Second party agrees to pay all drainage taxes becoming due and payable from and after March 1, 1910, but first party shall pay general taxes for 1909. Witness our hands the day and year above written. S. Y. Eggert. F. M. Rice.

And this bears an indorsement, as follows:

Dows, Iowa, December 14, 1909. For valuable consideration I hereby sell and assign unto G. H. Jameson all my right, title and interest in and to the within contract. [Signed] F. M. Rice.

Before making the contract with Hambleton and Howerton, Rice had talked with Eggert about this portion of the land and also with some attorneys representing Pratt, and was informed as to the price and terms at which he could buy

the lands. Rice was without financial resources; but, nothing daunted, he undertook to and did make a contract to sell them, doubtless in the hope and with the expectation of being able to buy from the owners. The terms, of what we shall hereafter call the Hambleton contract, have already been set out. It is manifest that Rice and Hambleton and Howerton were undertaking a speculative venture, something akin to "high finance." At any rate, having made the Hambleton contract, Rice undertook to get the title to the land, and, when he approached the owners, he found he would have to make an advance payment of $1,000 upon the Pratt land, and $500 on the Eggert tract. Unable to do this from his own means, he went to defendant Jameson for a loan for thirty days; he proposing to indorse his contracts from the owners of the land to Jameson, to secure him for the advances made. Jameson agreed to and did furnish the money with which to make the advance payments. Abstracts of title were then secured and sent to Des Moines for examination by Hambleton and Howerton, but they held them for more than thirty days and only returned them upon demand. No stated objections were made to the abstracts, although Howerton testified that his attorney made some written objections which he (Howerton) had misplaced. Hambleton and Howerton did not pay the $2,998 required of them by their contract, and it is claimed that they wholly abandoned and repudiated the same. As to this, more hereafter. At all events, Rice failed to get his money on the Hambleton contract, and he placed it in the hands of his attorneys for enforcement. These attorneys wrote to both Hambleton and Howerton about adjusting the matter; but the attorneys got no response, and each said he did not answer the letter he received. Rice's obligation to Jameson was by this time past due, and on or about December 14, 1909, he informed Jameson that the Hambleton contract had been abandoned, that he was unable to take up his contracts with him (Jameson), and he proposed to Jameson that he take over the contracts which he (Rice) held with the owners of the land abso-

lutely and discharge him (Rice) from his obligations. This Jameson consented to, and, after canceling Rice's debt, he made full payments to the owners of the lands, under these contracts, and finally received deeds therefor. He also, as we understand it, executed the mortgages called for by the contracts. After taking possession of the land, Jameson made many and valuable improvements thereon and was in possession when this suit was commenced in March of the year 1910, although the action for specific performance was not commenced until many months later.

After the absolute assignment of the contracts to Jameson, Rice brought an action in his own name against Hambleton and Howerton in the district court of Wright county, to recover damages for their breach of contract with him, and upon the trial of that action he testified to substantially the same facts that we have heretofore set out. Upon the trial of that action and at the close of the testimony, the defendants therein made the following motion: "Defendants at this time move the court to direct the jury to return a verdict for them for the reasons: First, that the evidence failed to show that the plaintiff furnished to defendant at any time abstract of title to the land in controversy showing that the title could or would be made good or that the plaintiff had directly or indirectly any interest therein." This motion was sustained, and judgment was rendered against Rice. Thereafter he seems to have joined teams with Hambleton and Howerton, and, after discharging his former attorneys, he employed others, and doubtless on their advice he came into this case and his attorneys assisted in preparing the amended petition and his own cross-petition on which this case was tried. Neither plaintiff nor his associate Howerton ever made any tender of performance to Jameson, Eggert, or Pratt of any of their part of the contracts or agreements entered into with them; nor did they show any ability to perform at any time, save that Hambleton testified that, if he had been permitted to sell the land after Rice had assigned the contracts to a certain purchaser, he

would have had enough money to have enabled him to perform the Rice contract. Howerton testified that he never offered to perform his contract with Rice at any time, and it clearly appears that he abandoned it. Aside from the testimony with reference to the abandonment of the Hambleton contract and the refusal of the vendees to perform, this is an outline of the main facts in the case. The crucial facts are: First, did Rice have any right, title or interest in the lands or any part thereof at the time he undertook to sell them to Hambleton and Howerton; and, second, if he did, was the contract between these parties abandoned? Time was not made the essence of that contract, and it was never legally forfeited either by Rice or by Jameson. Aside from these, there are some collateral questions which have more or less bearing upon the case.

I. The record shows, as we think, that while Rice had talked with the agents of Mrs. Pratt about the purchase of her lands at the time Rice made the Hambleton contract and had perhaps agreed upon the price and terms; yet no valid contract had been entered into; no part of the purchase price had been paid, and nothing more had been done than to give Rice the price and the terms. The same is true as to the Eggert contract, and although it was dated August 12, 1909, it was not in fact executed until some time in the month of October of that year, and was antedated as of the time when negotiations were begun. It is agreed by all the parties to this Hambleton contract that it was speculative in character. The vendees paid but $2 in cash to bind the bargain, and they knew that Rice had no title, although he expected to get one. Indeed, they demanded an abstract showing title before they would perform their contract and defeated Rice in his damage suit because he had not furnished them with an abstract showing title and because he, in fact, had no title at the time the contract was made. It is practically conceded that Rice had no title and no contracts for title at the time he made the Hambleton con-

1. SPECIFIC PER-
FORMANCE:
title: evi-
dence.

tract. The contracts he did make with Eggert and Pratt were never personally delivered to Rice. They were sent directly to Jameson as security for the money advanced by him and never came into the actual possession of Rice. We are satisfied from the testimony, although there is a dispute therein, that Rice agreed that Jameson should take the contracts absolutely in satisfaction of his loan and that this agreement was made some time in December of the year 1909, when it seemed that Rice could not get the money from Hambleton or Howerton to meet his obligations to Jameson and when he thought that he would be unable personally to carry out his contracts with Pratt and Eggert. The question of abandonment is more difficult of solution. Rice had abstracts of title sent to Hambleton and Howerton for their examination which were finally returned without any objections noted thereon or accompanying the same, at the request of a bank which was the forwarding agent for Rice. Rice was evidently trying to get some money on the Hambleton contract, for, in response to letters or demands from Rice, Hambleton wrote the letters which we here quote:

Des Moines, Iowa, Oct. 13, 1909. F. M. Rice, Dows, Iowa—Dear Sir: I tried Monday a number of times to get you by 'phone, but failed to do so, and was called out of the city Monday evening and just got back this morning. I have been trying to find Mr. Howerton, who was to have been here a week ago, but have failed to reach him and do not understand what is keeping him away. I realize the fact that he should have been here and matters closed up. Mr. Bybee is just in and says he had an opportunity of turning the land so that we could get an advance of $2,000.00 or more, and if so, wants to know whether it could be turned and you folks get half of the profit, and while I would like to turn for money, yet if you can make the turn and wire me before Howerton gets back I will see that the deal goes through, or if he comes in before hearing from you I will communicate with you and this will stand good until I do. Of course if he does not come across and you do not make the deal as Mr. Bybee thinks, I will then try and protect you and take

the matter up with another party and close up as agreed upon. Am sorry for any delay or inconvenience it may have caused you. Anything further in reference to the mat-ter please drop me a line at once. Yours truly, J. T. Hambleton.

Des Moines, Iowa, Nov. 10, 1909. F. M. Rice, Dows, Iowa—Friend Rice: I received your card and have been waiting so as to give you a definite answer as to when the deal on the Wright county farm could be closed up, but owing to sickness in the family of one party who has money to pay in, which has kept him away from home I have been unable to get things in shape so as to tell definitely when you could expect to have the matter closed up. I certainly will hear from him within the next few days and will then advise you. Bybee is here. He talked of going up to Clarion but don't know just when he expects to go. Is there anything new with you? I am Yours truly, J. T. Hambleton.

And Howerton wrote him the following letter:

Oskaloosa, Iowa, Nov. 7, 1909. F. M. Rice, Dows, Iowa —Dear Sir: I just arrived home and find your letter and card. I beg to say that I relinquished all my right in the Wall Lake farm deal to Mr. Hambleton before I left home. He said he had a friend and that he and his friend could handle it. I have a friend here that has the best livery and transfer barn in the state of Iowa who wants to trade for a large farm. Kindly send me accurate description of the 700 acres west of Dows. The lowest net price. Yours respect-fully, W. R. Howerton.

Having failed to get his money, he (Rice) placed the mat-ter in the hands of his attorneys, and these attorneys wrote Hambleton the following letter:

Clarion, Iowa, Nov. 23, 1909. J. T. Hambleton, Esq., Des Moines, Iowa—Dear Sir: Mr. F. M. Rice, of Dows, Iowa, has placed in our hands the contract made between yourself and Mr. Howerton and Mr. Rice, for the purchase of land located in sections No. 14 and No. 23-90-24, this county, with

instructions to push the same unless satisfactory adjustment is made at once. Kindly let us hear from you regarding the matter, and oblige, Yours truly, Birdsall & Birdsall.

Practically the same letter was written to Howerton, as we understand it. Each addressee received the letter, but neither answered it; and on December 14th, of the same year, Rice made his arrangement with Jameson whereby Jameson was to cancel the loan and take and perform the contracts with the owners and treat the contracts and the property as his own. This Jameson did, and about February 21st, of the year 1910, he received deeds from Pratt and Eggert and executed mortgages back to them, all as provided in the Rice contract. It seems from this record that Howerton fully abandoned the contract on his part and relinquished all his rights therein, if he had any, to Hambleton. Hambleton says, however, that Rice did not comply with his agreement to furnish abstracts, showing title; that the $2,998 of the purchase price mentioned in his contract did not mature until proper abstracts were furnished and not in any event until March 1, 1910; that the contract was never abandoned by him and never forfeited by Rice or his assignee. The record shows that Hambleton was still holding onto his contract, or rather that he was trying to dispose of the land so as to make a profit on it, and it is shown that some time in February, of the year 1910, he worked up a trade with one Maine, for the property; that Maine went to see the land, saw Jameson, who informed him (Maine) that he (Jameson) was the owner of the land, but upon his return to Des Moines he and Hambleton finally agreed upon a trade, and on February 24, 1910, Hambleton wired Rice as follows: "Am ready to close balance contract. Shall I come. Wire at my expense. J. T. Hambleton." Rice consulted with Jameson as to the answer to be sent, and the response was as follows: "Your message received. Have consulted Jameson. He will take $60 net if closed Saturday this week. F. M. Rice."

Suit to quiet title was commenced March 3, 1910, but the bill was not changed to one for specific performance until

January 27, 1911.  Jameson went into possession of the land in the spring of 1910, and has made improvements upon the land amounting to more than $6,100.  He has also had the use thereof down to the present time.  Hambleton and Howerton knew of the loan made by Jameson to Rice and were familiar therewith in a general way.  They knew that it was a short time loan, and of course knew that Rice was trying to get the money from them in order to save his contract.  Nevertheless they did nothing toward aiding him in the matter and gave Jameson no notice of their intent to abide by their contract until they sent the telegram in February, after Jameson had taken title to the land or was about to take it.  Jameson received a deed from Mrs. Pratt February 21, 1910, and from Eggert on February 24, 1910.  The message from plaintiff to Rice was not sent until February 24th, of the same year.

We neglected to say that the abstracts sent for the benefit of plaintiff and Howerton were kept some time without any objections being raised, and that on November 12, 1909, their return was demanded by the party who sent them.  The letter was as follows: "Dows, Iowa, Nov. 12, 1909.  Central State Bank, Des Moines, Iowa—Gentlemen:  Some time ago I mailed to you two abstracts for you to let J. T. Hambleton and W. R. Howerton examine.  They have had these abstracts long enough now and I wish you would please forward same to us at once.  Very truly yours, O. M. Benson, Cashier."  The letters accompanying the abstracts were as follows: "Dows, Iowa, Sept. 23, 1909.  Central State Bank, Des Moines, Iowa—Gentlemen:  Inclosed please find abstract that is sent to you to be turned over to W. R. Howerton or J. T. Hambleton for examination; same to be returned to us after it has served its purpose.  Yours very truly, O. M. Benson, Cashier."  "Dows, Iowa, Sept. 13, 1909.  Central State Bank, Des Moines, Iowa—Gentlemen:  Inclosed please find abstract sent to you to be examined by W. R. Howerton or J. T. Hambleton or both.  After they have examined same, please return to us.  Yours truly, O. M. Benson, Cashier."

Pursuant to request, the abstracts were returned without any comment. It is contended for plaintiff that he at all times had the means whereby to make the payment of $2,998, and that he did not do so because the abstracts were not sufficient. But he made no objections to the abstracts which came to Rice's knowledge and suffered their return by the bank to which they were sent without objections or request of any kind. If he had the means, it seems that he did not care to use the money to make this payment, and the most that can be said is that he endeavored to hold onto the contract and to advantage himself of it, provided he could unload the property before the 1st day of March, 1910, and was not himself compelled to pay anything thereon. In other words, it looks as if he were speculating upon results, intending to hold onto the contract, if he could find a buyer for the land, but, if he could not, to let it go. He knew that Jameson had furnished Rice money to pay out on the land and in equity and in good faith, it seems to us, it was his duty, especially when called upon by Rice's attorneys, to indicate his position in the matter, instead of remaining silent and concluding in his own mind to hold on, if he could, and to let go if any more money was to be paid.

Appellants are not seeking to enforce either the Pratt or the Eggert contracts with Rice, save as they are subpurchasers of the land from Rice, and, if they were, they would not be entitled to that relief because they have at no time offered to perform either. They are standing wholly upon the Hambleton contract with Rice, saying that this they offered to perform according to its terms, and that this contract has never been legally forfeited. They also say that, as Jameson is not a good-faith purchaser of the land, they are entitled to enforce the Rice contract with him to have specific performance against Jameson and are not obliged to compensate him for improvements made, because he was and is nothing but a mortgagee and the most that he is entitled to is a return of his money with interest. It is true, as already sug-

gested, that time was not of the essence of the Hambleton contract, and that it was never legally forfeited for nonpayment; but it is also true that this contract did not, by its terms, give the vendees therein, Hambleton and Howerton, until March 1, 1910, to make the payment of $2,998. That payment was to be made in thirty days ("when abstracts are furnished showing that title will be good"). Abstracts were sent, and after being held for more than thirty days were returned without any objections thereto. They made no effort at that time to pay this installment of the purchase price, and Howerton expressly disclaimed any further interest in the contract. Rice was endeavoring to get the money from Hambleton and Howerton, so as to repay Jameson, and Hambleton's answers to his requests were very vague and unsatisfactory. He must have known that he did not have until March 1st to make the payment of $2,998, and he did not put his refusal to pay upon the ground that the abstracts sent him were unsatisfactory. In these letters he indicates that if he can sell or trade the land he will make payments. Failing to get the money from Hambleton and Howerton, Rice puts the matter in the hands of his attorneys, and these attorneys could get no response from them. Being unable to get the money, he goes to Jameson, telling him that the contract with Hambleton and Howerton had been abandoned, and he then made the final arrangements with Jameson, already referred to, and Jameson closed up the matter with the true owners of the land. As a matter of fact, this was purely a speculative venture on the part of Hambleton, Howerton, and Rice. Rice never did have title to the land and was never able to perform his agreement, and, in his suit against Hambleton and Howerton to recover damages for their failure to complete the contract, they were successful because Rice had no title and had failed to furnish proper abstracts.

The case is in equity for specific performance, and while time was not the essence of the contract between Hambleton

and Howerton and Rice, equitable principles require that the

vendee, even of such a contract, be ready,

2. SAME: readiness to perform: intervening equities denial of decree.

willing, and able to perform his part of the agreement according to its terms, and if other equities arise, growing out of failure or neglect to perform, specific performance will not be decreed. *Finley v. Koch,* 126 Iowa, 131; *Davies v. Beadle,* 37 Iowa, 390; *King v. Raab,* 123 Iowa, 632; *Giltner v. Rayl,* 93 Iowa, 16.

Again, it seems to us that there was an abandonment of the contract by both Hambleton and Howerton. Surely How-

erton abandoned and refused to perform,

3. SAME: abandonment: evidence.

and they succeeded in defeating Rice on the theory that the contract had either been rescinded or that Rice had failed to perform his part of it.

While it may be that an estoppel is not pleaded or especially relied upon, we are disposed to hold that on account

of the conduct of Hambleton and Howerton,

4. SAME: equitable estoppel.

in refusing to pay and in defending against Rice's suit for damages, they are not entitled to relief in a court of equity.

As Howerton absolutely abandoned and refused to perform the contract, Rice was not obliged to take Hambleton

alone on the notes which the two had agreed

5. SAME: joint contract: enforcement.

to make for the purchase price, and Hambleton alone could not, even as assignee from Howerton, insist that the contracts be carried out in his name alone. *Rice v. Gibbs,* 40 Neb. 264 (58 N. W. 724); *Martin v. Orndorff,* 22 Iowa, 504; *Wass v. Mugridge,* 128 Mass. 394.

We shall not trouble to consider other propositions in the case, as the ones already stated seem to settle the controversy. The equities seem to be with defendant Jameson. We fully realize that there is a conflict in the testimony regarding some of the matters stated, and have recited what we believe the testimony shows the facts to be, without attempting to quote the evidence or to set out the statements of the witnesses.

Our conclusion on the whole case finds support in *Townsend v. Goodfellow,* 40 Minn. 312 (41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736) ; *Luse v. Deitz,* 46 Iowa, 205 ; *Ormsby v. Graham,* 123 Iowa, 202 ; *Webb v. Hancher,* 127 Iowa, 270 ; and *Findley v. Koch, supra.*

The decree seems to be correct, and it is *Affirmed.*

WEAVER, C. J., and GAYNOR and WITHROW, JJ., concurring.