J. C. Braig, Appellant, v. C. J. Frye et al., Appellees.

**VENDOR AND PURCHASER:** Option (?) or Purchase (?) Option
1  contract for the purchase of lands reviewed, and held that the payment made thereunder constituted a part of the purchase price of the *land,* and not a part of the purchase price of the *option.*

**MORTGAGES:** Assumption of Payment. The assumption of pay-
2  ment of a mortgage on purchased land may not be avoided on the plea that, subsequent to the assumption, the discovery was made by the promisor that the mortgage covered lands additional to that purchased.

**VENDOR AND PURCHASER:** Option Contract. Contract re-
3  viewed, and held to be a mere option to buy, even though the price paid therefor was apparently grossly excessive.

**VENDOR AND PURCHASER:** Forfeiture of Contract. An option
4  contract for the purchase of realty becomes a contract of purchase whenever part of the purchase price is paid, and may then be forfeited only under the provisions of Sec. 4299 *et seq.,* Code Supp., 1913.

*Appeal from Palo Alto District Court.—*N. J. LEE, Judge.

OCTOBER 26, 1920.

UPON the sustaining of a demurrer to his petition, plaintiff elected to stand on the ruling, and the petition was dismissed. The plaintiff appeals.—*Reversed.*

*Lyon & Willging,* for appellant.

*E. A. & W. H. Morling,* for appellees.

LADD, J.—The parties hereto entered into a contract, December 27, 1915, by the terms of which plaintiff undertook to convey to the defendants two quarter sections of land in Hughes County, South Dakota, subject to two mortgages, one for $2,000 and the other for $500, and two quarter sections in Sully County, of the same state, subject to a mortgage of $3,500, grantee to assume these mortgages, and such conveyances to be made immediately upon the execution of the contract. The contract provided that: "In consideration thereof, this instrument shall and is made to witness that the second party [plaintiff] has been granted by first parties [defendants] the option and privilege of purchasing" 260 acres of land in Palo Alto County, Iowa, as described, "on or before November 1, 1916, on the following conditions, terms, and provisions, to wit: Second party shall pay first parties at the Emmetsburg National Bank at Emmetsburg, Iowa, four thousand dollars ($4,000) as follows: $1,000 on or before March 1, 1916, and $3,000 on or before November 1, 1916. It being expressly understood that the exercise of said option shall not be complete until the full payment of said $4,000."

Here follow conditions relating to the extension of the time of payment of the $1,000, not necessary to be set out. It is then provided that, "when said $4,000 shall have been fully paid, if paid by the time stated, this agreement shall

1. VENDOR AND PURCHASER: option (?) or purchase (?)

witness that the second party has purchased the premises in Palo Alto County, Iowa, above described, of the first parties," at $155 per acre, in the manner following: By assuming an existing mortgage of $14,000, and executing a promissory note for $4,000, and another for $5,600, secured by a mortgage on the 260 acres of land, subject to that referred to.

"When the foregoing provisions have been complied with by the second party, first parties agree to credit second party, upon said purchase price, twelve thousand seven hundred dollars ($12,700) for the equity in said South Dakota land above described, and the $4,000 which were paid to first parties for said option."

The contract then provides that the first parties shall let and collect the rents of the 260 acres of land, and account therefor to the party of the second part, and assign the lease and all unpaid rents.

"It is expressly understood that time is of the essence hereof, and failure or neglect on the part of second party to faithfully and literally carry out and perform the terms and provisions hereof promptly at the times herein fixed, shall entitle first parties at their option, to declare this contract and agreement forfeited, and to cancel and annul the same as provided by the Code of Iowa; and in case of cancellation all payments made either in money or property shall be retained by first parties as liquidated damages. It being expressly understood that the title to the said land in South Dakota shall have vested absolutely in first parties in fee simple, for their sole use and benefit, in any event, together with the $1,000 payment, if paid, or the note and mortgage to be given in lieu thereof, if the same shall have been executed, as those items are the purchase price of the option and privilege of purchasing the Iowa land, hereby granted to second party. And it is further understood that this agreement does not become a contract of purchase until said $4,000 shall have been fully paid."

Then follows the undertaking of defendants to convey

the land, and furnish abstracts on payment, as aforesaid.

"It is expressly understood that the conveyance of the said land in South Dakota as herein stated is a condition precedent to the validity of this agreement, and if second party fails or neglects to convey the said land in South Dakota, and to deliver abstracts of title, promptly as herein stated, first parties may at their option declare this agreement null and void, but that upon the execution and delivery thereof to first parties, this contract and agreement shall be accepted by the parties hereto in lieu of the contract entered into August 5, 1915, and as a substitute therefor, and the agreement shall thereby become null and void."

The petition alleged that the South Dakota land was conveyed, and that plaintiff paid the $1,000 as agreed, on or before March 1, 1916; that subsequently plaintiff had an opportunity to dispose of the land in Palo Alto County, so informed defendants, and requested an abstract of title, but, upon examining that furnished, discovered that other lands were included in the incumbrance described in the contract as covering said land, and that it was impossible to obtain a release thereof, and for this reason the abstract was rejected, and plaintiff lost said deal. It is further alleged that, shortly before the commencement of this suit, an adjustment of differences was requested, but defendants informed plaintiff that "they would do nothing." No notice of forfeiture was ever given plaintiff, and the contract has not been canceled. Defendants retain possession of the money paid them, and have not reconveyed the lands in South Dakota, and will retain all this property, unless plaintiff is granted relief. Plaintiff also alleged that it would be unconscionable for defendant so to do "without a proper, fair, and equitable return to this plaintiff," and that "he is ready and willing to carry out the terms of said contract in a manner in which this court may find reasonable, just, and equitable in the premises." This was followed by an appropriate prayer.

The ruling on the demurrer was that the facts stated did not entitle plaintiff to any relief.

The allegations that a release of the mortgage by plaintiff could not be obtained, and that it covered other land, furnished no excuse for nonperformance. Defendants had not undertaken to procure such release, and

**2. MORTGAGES: assumption of payment.**

that the mortgage may have covered other lands would not have relieved plaintiff from assuming its payment in consummating the deal. The controlling question for our determination is whether the contract was and continued to be a mere option, or became one of purchase. That originally it was a mere option, is not fairly debatable. True, plaintiff undertook to and did convey a section of land

**3. VENDOR AND PURCHASER: option contract.**

in South Dakota, burdened with mortgages aggregating $6,000, but, in consideration thereof, the contract is made "to witness that the second party has been granted by the first parties the option and privilege of" purchasing 260 acres of land in Palo Alto County. The price for a mere option seems somewhat extravagant, the stipulated value of the section, subject to the mortgages, being $12,700; but that was a matter for the parties to determine, and by such conveyance, plaintiff did not become a purchaser of the Palo Alto County land, but merely acquired the option to become such purchaser, by pursuing the course defined in the contract. *Myers v. Stone & Son*, 128 Iowa 10. See cases collected in note to *Rampton v. Dobson*, 3 A. L. R. 569. Thereby he obtained the "option and privilege of purchasing" the 260 acres, but upon certain prescribed terms, i. e., paying $4,000; $1,000 on or before March 1, 1916, and $3,000 on or before November 1st of the same year, "it being understood that the exercise of said option shall not be complete until the full payment of the $4,000." The plaintiff paid this $1,000,—at least we must so assume, as the allegations of the petition are to be taken as true,—and, even though it may not have been a complete exercise of the option, whatever that may mean, it was a payment on the purchase price. The only option and privilege given was that of "purchasing" the land. Since plaintiff had the option to buy, the

exercise of that option was in buying, and by paying the consideration agreed upon. By "complete exercise" of the option seems to have been meant the full payment in cash, and that plaintiff might acquire the title only by doing something more, namely, by assuming the payment of a $14,000 mortgage thereon, and by executing two notes, amounting to $9,600. Thereupon, a credit of $12,700 was to be allowed for the South Dakota land. Surely, if the payment of $1,000 was a partial exercise of the option, it was none the less a payment on the purchase price, a part of the consideration, aside from the price offered for the option. But it is recited that credit is also to be entered for the payment of $4,000, "which were paid to the first parties for said option." But this recital is not accurate; for the option was acquired upon the conveyance of the South Dakota land, and the payments of $1,000 and $3,000 *in exercising* the option. Further on, it is again recited that "those items [conveyance of land and payment of $1,000] are the purchase price of the option and privilege of purchasing the Iowa land." But this is not the correct interpretation of what had preceded, and, as the language is merely detailing what had preceded, without purporting to construe, we are of opinion that the stipulation therein that the conveyance of the South Dakota land and delivery of abstracts of title thereto "shall and is hereby made to witness that the second party has been granted by first parties the option and privilege of purchasing," conferred such option to buy, and on the conditions specified: that is, by paying $1,000 on April 1st, and $3,000 on November 1st following. Of course, conveyance of the Iowa land might not be claimed until the entire $4,000 was paid, and, moreover, it must have been paid on the dates named; for time was of the essence of the contract. The instrument further recites, in the same connection, that "it is understood that this agreement does not become a contract of purchase until said $4,000 has been paid." The language of the instrument excludes the $1,000 or the $3,000 from being any part of the consideration given for the option. Where was

it to be applied? What did the agreement contemplate after this payment? The contract had previously specified that plaintiff had the privilege of purchasing, upon the payment of $4,000: $1,000 on or before November 1st. This was required to be paid in money. No more was exacted of plaintiff than that he (1) assume payment of an existing mortgage, and (2) execute the notes of $4,000 and $5,600, and the mortgage to secure their payment. Thereupon, defendants undertook to execute the conveyances of the Iowa land, and furnish abstract of title thereto. What else was the $1,000, other than one of the payments exacted? We are of opinion that its payment clearly evidences the vendee's election to exercise the option he acquired by conveying the South Dakota land. Payment of the $3,000 was essential to the complete exercise of the option,—that is, to the purchase of the land; and it must be in this sense that $4,000 is required to be paid before the agreement can be said to have become a "contract of purchase." The instrument is somewhat ambiguous in the respects pointed out, but there is no escape from the conclusion that the payment of the $1,000 evidenced the election to take the land, and constituted a part of the purchase price, and that the contract may be forfeited only in the manner prescribed by Sections 4299 and 4300 of the Code Supplement, 1913. Section 4301 of the Code exacts that these sections "shall be operative in all cases where the intention of the parties, as gathered from the contract and surrounding circumstances, is to sell or to agree to sell an interest in real estate, any contract or agreement of the parties to the contrary notwithstanding." This contract became one of sale upon payment of part of the purchase price, notwithstanding some ambiguities injected therein. The demurrer should have been overruled.—*Reversed.*

4. VENDOR AND PURCHASER: forfeiture of contract.

Weaver, C. J., Stevens and Arthur, JJ., concur.