J. C. BRAIG, Appellant, v. C. J. FRYE et al., Appellees.

**SPECIFIC PERFORMANCE:** Ability to Perform—Failure of Proof.
1 Failure by plaintiff to prove that he is *able* to carry out a contract for the conveyance of real estate necessarily forecloses his right either to specific performance or to alternative relief in the way of damages.

**CONTRACTS:** Mutual Default—Effect. Principle recognized that mu-
2 tual default continues the life of a contract.

Headnote 1. 36 Cyc. p. 693. Headnote 2. 39 Cyc. p. 1336.

*Appeal from Palo Alto District Court.*—N. J. LEE, Judge.

SEPTEMBER 26, 1924.

REHEARING DENIED JANUARY 16, 1925.

ACTION in equity, to compel the specific performance of a contract to convey real property. The court below found that

plaintiff was entitled to a decree as prayed, but, as the defendants were unable to make conveyance in accordance with the contract, awarded alternative relief in damages in the sum of $3,500. Both parties appeal. Plaintiff, having first perfected his appeal, will be treated as the appellant.—*Affirmed on plaintiff's appeal; reversed on defendants' appeal.*

*Lyon & Willging,* for appellant.

*E. A.* and *W. H. Morling,* for appellees.

STEVENS, J.—This is an action in equity, to compel the specific performance of a contract to convey 258 acres of land in Palo Alto County, Iowa. Decree entered in the court below in

1. SPECIFIC PERFORMANCE: ability to perform: failure of proof.

favor of appellant gave him alternative relief in damages in the sum of $3,500. Plaintiff's appeal is only from the amount of damages awarded. The defendants' appeal challenges the right of appellant to recover at all. The contract in controversy bears date December 27, 1915, and fixed November 1, 1916, as the date for final performance and exchange of papers, time being made of the essence of the contract on appellant's part. Appellees, as parties of the first part, agreed to convey the Palo Alto County land, subject to mortgages aggregating $14,000, in exchange for 320 acres in Hughes County and another 320-acre tract in Sully County, South Dakota, both subject to designated incumbrances. In addition to the conveyance of the Dakota land, appellant agreed to pay appellees $1,000 on or before March 1, 1916, or, in lieu of such payment in cash, to execute his note therefor, due November 1st, and to secure the payment thereof by a first mortgage upon 240 acres in Wyoming, and to pay the further sum of $3,000 on or before November 1, 1916. The contract further required appellant, on November 1, 1916, to execute to appellees two promissory notes, one for $4,000 and one for $5,600, both maturing March 1, 1917, and to secure the payment thereof by mortgage upon the Palo Alto County farm.

Deeds conveying the Dakota land to appellees were executed and delivered by appellant as agreed; and on or about March 1, 1916, a note for $1,000, secured by mortgage upon the

Wyoming land, was executed. This mortgage was later foreclosed, and the land sold on special execution. Sometime in the latter part of June or the first of July, 1916, appellant assigned his interest in the contract to one John Schmierer, in exchange for some Omaha property. At the time the contract in controversy was executed, the Palo Alto County farm, with other lands, was incumbered by a blanket mortgage for $56,504.13, which provided that the same might be released as to certain tracts, which included those described in the contract, upon the payment of a sum equal to $75 per acre, on any interest pay day, the pro-rata incumbrance being, however, only about $60 per acre. After the contract had been assigned by appellant to Schmierer, an abstract showing the incumbrance above referred to was, at his request, furnished him by appellees. On July 13th, appellant wrote Frye, one of appellees, a letter, inquiring if a partial release of the blanket mortgage could not be obtained, so as to reduce the incumbrance to $14,000, the amount he had agreed to assume on the land. To this letter Frye replied that he was of the opinion that a partial release of the mortgage could not be obtained; and, prior to this date, Kulp, also one of appellees, wrote appellant, in answer to a letter from him, explaining fully the situation with reference to the $56,000 mortgage. Appellant testified that he went to Emmetsburg in August, 1916, and demanded of Frye a conveyance of the Palo Alto County farm, subject to an incumbrance of $14,000, as agreed, and that his demand was refused, upon the ground that appellees could not comply with it. The contract fixed November 1st as the time, and the Emmetsburg National Bank, Emmetsburg, Iowa, as the place, of final performance of the contract. Appellant further testified that he informed Frye, on the occasion above mentioned, and also on a prior occasion in July, that Schmierer was ready to pay the balance of $3,000, and that he, appellant, would execute the notes and mortgages upon the Palo Alto County farm, as required by the contract, if appellees could adjust the incumbrance so as to comply therewith. No other offer or tender of performance was ever made by appellant, nor did appellees at any time tender an abstract showing an incumbrance on the Palo Alto County land of $14,000 only, nor did they tender a deed conveying the same to him. On the

contrary, appellees, at all times treating the contract as a mere option until full compliance with its terms by appellant, notified him, shortly after November 1st, that he had forfeited all rights under the contract, but did not give him the statutory notice of forfeiture.

This closed all negotiations between the parties until on or about February 5, 1917. On that date, appellee Kulp, in a letter written in reply to one received from Messrs. Campbell & Campbell, attorneys for appellant, offered a reconvéyance of the Dakota land to him, upon the payment of the commissions, expenses of trips to Dakota, attorney fees, and other expenses in adjusting the incumbrances and otherwise handling the land. On February 10th, Kulp again wrote to the Campbells, submitting a statement of expenses, commissions, etc., totaling $2,105.44, which was the amount appellees demanded as a condition precedent to a reconveyance of the South Dakota land. The offer was refused on February 17, 1917, by letter in which Campbell requested a statement of the amount necessary to be paid by appellant to consummate the contract, and suggested that he might be able to go ahead with the deal. So far as the record shows, nothing further occurred between the parties until the latter part of June or the first of July, 1917, when appellant casually met appellee Kulp on a railway train. Both appellant and Kulp admit that the contract was referred to, but they give widely different versions of the conversation. Appellant testified that he asked Kulp what he intended to do about the contract, and that Kulp replied, "Nothing," and that appellant then threatened to seek recourse at law. At the time of this conversation, the mortgage upon the Wyoming land was in process of foreclosure. Kulp testified concerning this conversation that appellant took from his pocket a copy of an original notice in the action to foreclose the mortgage on the Wyoming land, which was served by publication, and said:

"If you gentlemen had given me something, I would have given you a deed, and saved you the trouble."

He further testified that appellant said he thought he ought to be entitled to something, and that Kulp told him that appellees would have been willing to turn the South Dakota land back to him, but that appellant replied, "I just took a long shot

at it and lost," and that he did not want the Dakota property. Kulp admitted that he said that, so far as he was concerned, the case was closed and option forfeited. The next effort by either party to close the deal was in August, 1918, when appellant's attorney went to Emmetsburg to secure some adjustment of the matter, if possible. Upon his failure to accomplish this, action was commenced for specific performance of the contract.

A demurrer was filed to the petition and sustained by the court upon the theory that the contract granted appellant a mere option to purchase the Palo Alto County farm, and that he had wholly failed to meet the terms thereof. Upon appeal, the judgment of the court below was reversed, upon the ground that, notwithstanding that the contract was originally a mere option, the payment of $1,000 by the execution of the note and mortgage on the Wyoming land was a payment on the purchase price, and the contract, thereupon, became a contract of purchase. *Braig v. Frye,* 189 Iowa 1104.

The defenses urged in the court below to appellant's cause of action, and again in this court, are: (a) That, by failing to tender payment of the amount due November 1, 1916, and to otherwise comply with the contract, appellant is, and has at all times since been, in default, and in no position to seek relief in equity; (b) that appellant failed to show that he was ever ready or able to perform the contract on his part; (c) that the contract was wholly abandoned by him before this action was commenced, which was in August, 1918; and (d) that, as he did not make out a case entitling him to a decree of specific performance, he was not entitled to alternative relief in damages.

As appellant's appeal involves only the measure of recovery, we will first dispose of the questions raised on the cross-appeal, which challenges appellant's right to recover at all.

For convenience, we will precede our discussion of the pivotal questions in the case by a brief statement of a few familiar general principles applicable to actions for the specific performance of contracts to convey real property, and in actions at law to recover damages for the breach thereof. In an action at law to recover damages for the breach of a contract to convey, the plaintiff must allege and prove performance of, or an offer to perform, all the covenants of the contract to be per-

formed by him as a condition precedent to the commencement of the action. *Edgerly v. Farmers' Ins. Co.*, 43 Iowa 587; *White v. Day, Egbert & Fidlar*, 56 Iowa 248; *Old Settlers' Inv. Co. v. Marshall Vinegar Co.*, 137 Iowa 558; *Watson v. Moeller*, 63 Iowa 161; *Winton v. Sherman*, 20 Iowa 295; *Nelson v. Wilson*, 75 Iowa 710; *Moline Scale Co. v. Beed*, 52 Iowa 307; *Clapp v. Greenlee*, 100 Iowa 586; *Bettendorf v. Bettendorf*, 190 Iowa 83.

Tender or offer of performance is usually excused in equity unless necessary to put an adversary in default, and is not required when it would be but an idle ceremony; and it is sufficient to allege readiness and willingness to perform. *Auxier v. Taylor*, 102 Iowa 673; *Veeder v. McMurray*, 70 Iowa 118; *Aller v. Pennell*, 51 Iowa 537; *Winton v. Sherman*, supra; *McCormick v. Basal*, 46 Iowa 235; *Goettsch v. Weseman*, 185 Iowa 1213; *Dierksen v. Pahl*, 194 Iowa 713. But a party in default cannot maintain an action for specific performance. The plaintiff must, in all actions for the specific performance of contracts, allege and prove that he has at all times been ready, able, and willing to perform the covenants of the contract on his part. *Findley v. Koch*, 126 Iowa 131; *Legvold v. Olson*, 194 Iowa 1000; *Hambleton v. Jameson*, 162 Iowa 186; *Culbertson v. Smith*, 193 Iowa 436; *Giltner v. Rayl*, 93 Iowa 16; *Western Securities Co. v. Atlee*, 168 Iowa 650.

Where, under a contract to convey real property, the obligations of the parties are mutual and simultaneous, the failure of both to tender performance at the time fixed in the contract saves the default of each, and keeps the contract alive. *Wright v. Swigart*, 172 Iowa 743; *Waters v. Pearson*, 163 Iowa 391; *Voorhees v. Baier*, 194 Iowa 1320; *Miller v. McConnell*, 179 Iowa 377; *Lieuwen v. Blau*, 184 Iowa 327. In such circumstances, either may put the other in default by a tender of performance within a reasonable time. *Legvold v. Olson*, supra.

2. Contracts: mutual default: effect.

Damages in an action for specific performance are allowed only as alternative relief when, for some reason not the fault of plaintiff, the contract cannot be carried out by the defendant according to its terms. That is, equity will not retain jurisdiction for the purpose of awarding damages unless the plaintiff has shown himself entitled to equitable relief. 8 Elliott on Con-

tracts (Supplement), Section 2359. Such is the effect of the holding in the following cases: *Findley v. Koch,* supra; *Primm v. Wise & Stern,* 126 Iowa 528; *Giltner v. Rayl,* supra; *Dow v. McVey,* 174 Iowa 553; *Public Serv. Corp. v. Hackensack Meadows Co.,* 72 N. J. Eq. 285 (64 Atl. 976); *Brauer v. Laughlin,* 235 Ill. 265 (85 N. E. 283); *Wright v. Suydam,* 59 Wash. 530 (108 Pac. 610); *Morrison v. Land,* 169 Cal. 580 (147 Pac. 259); *Morgan v. Dibble,* 43 Cal. App. 116 (184 Pac. 704); *Falder v. Dreckshage* (Mo. App.), 227 S. W. 929; *Cartwright v. Oregon Elec. R. Co.,* 88 Ore. 596 (171 Pac. 1055); *Oregon-Wash. R. & N. Co. v. Reed,* 87 Ore. 398 (169 Pac. 342).

The argument of appellees proceeds on the hypothesis that not only was time of the essence of the contract, so far as appellant was concerned, but that performance of all of the covenants of the contract on his part was a condition precedent to the furnishing of an abstract of title or the conveyance of the Palo Alto County land by them, and that, by his failure to pay the balance due on the purchase price and to tender the notes and mortgages which he was required to execute as a part of the transaction, at the time and place fixed by the contract, he placed himself in default, and is not entitled to maintain this action for specific performance.

The portion of the contract upon which appellees rely at this point is as follows:

"If second party shall exercise said option, then upon compliance with the foregoing agreement by second party as herein provided, first parties agree to convey the said premises hereinabove described to be conveyed by them, by good and sufficient warranty deed, and to furnish second party an abstract showing good title of record to said premises in first parties, free and clear of all liens and incumbrances whatsoever, except such as have been referred to herein, and all taxes and assessments other than those for the year 1915 and prior years, and any other incumbrance or liens that may have been incurred by second party."

As opposed to this hypothesis, it is contended by appellant that the covenants of the contract were mutual and dependent, and were to be simultaneously performed; and that payment of the balance due on the purchase price, as well as tender or offer

to perform at the time and place fixed by the contract, was
excused by the admitted inability and refusal of appellees to se-
cure a partial release of the blanket mortgage, as demanded in
July and August; and that, in the absence of notice of any change
in the ability of appellees to convey the land, or of tender of
abstract and deed, subject to the agreed incumbrance, appel-
lant had a right to rely upon the information previously given
him, and was only required to allege in his petition readiness
and willingness to perform.

The evidence without dispute shows that appellees had
made arrangements, and would have been able to convey the
Palo Alto County land, subject to an incumbrance of $14,000
only, within a reasonable time after November 1, 1916. The
blanket mortgage was satisfied in full and released March 1,
1917, and, at the time of the trial, the mortgages on the land
aggregated a trifle less than $14,000. The court found that ap-
pellees had disabled themselves from specifically performing the
contract.

As we have already pointed out, neither party tendered per-
formance on or after November 1, 1916, and appellees, treating
appellant as the holder of a mere option, immediately after that
date repudiated the contract, and so advised him. The efforts
on behalf of appellant thereafter until this action was com-
menced were limited to securing a settlement of the controversy,
with the exception that appellant's attorney, on February 17,
1917, in a letter to Kulp suggested that he believed appellant
had the money to take up the contract, and requested a state-
ment of the amount necessary for that purpose.

As the proposition upon which we base our conclusion is
one to which all must give assent, and one that is necessarily
fatal to plaintiff's right to a decree of specific performance or
alternative relief, we need not, and shall not, decide any of the
other questions suggested by what we have already said, or that
may have been discussed by counsel in argument.

Where tender of performance would be an idle ceremony,
it is usually unnecessary as a condition precedent to the com-
mencement of an action in equity. It is, however, always in-
cumbent upon the plaintiff in an action for the specific perform-
ance of a contract to convey real property, to allege and prove

that he has either performed all of the covenants of the contract required to be performed by him, or that he is, and has at all times been, ready, able, and willing to do so. This is but an affirmation of the familiar maxim that "he who seeks equity must do equity." An action for specific performance is not primarily an action for damages, and damages will not be awarded as alternative relief unless the appellant has shown a right to maintain an action in equity. It is universally held that the court in actions of this character exercises a large discretion, and that the remedy, except in the sense that equity follows the law, is not allowed as a matter of right. Mutuality in the contract and of remedy is essential. For the court to grant alternative relief to one seeking specific performance who has not shown himself ready and able to pay the purchase price or to perform other essential covenants of the contract would be to ignore the maxim that "he who seeks equity must do equity," and would be a clear abuse of discretion.

We have examined the record with great care, but have found no evidence which in any way tends to show that appellant was himself ever ready or able to consummate the contract. He could, of course, have executed the designated notes and mortgage; but the contract required, in addition to this, that he pay $3,000 on November 1, 1916, as the balance due on the purchase price of the Palo Alto County land. The only evidence on the part of anyone as to ability to comply with this requirement of the contract is that of appellant, in which he testified that he informed appellees, in July and August, 1916, that Schmierer would pay the money if they would furnish an abstract showing an incumbrance on the land to be conveyed of $14,000 only. As to the ability of Schmierer to pay this sum, nothing further appears; but his ability is not really controverted. It is shown, however, that Schmierer repudiated the assignment of the contract to him, in December, 1916.

Appellant does not pretend or claim that he has shown himself, independent of his deal with Schmierer, at any time ready or able to pay the balance of the purchase price; and no evidence whatever, except as already stated, was offered upon this point. So far as appears, therefore, a decree of specific performance would have been futile, as appellees could not have been

compelled to convey the farm until the balance due on the purchase price was paid.

It is true, as stated above, that alternative relief was granted below upon the theory that appellees were not in a position to specifically perform the contract. Conceding the correctness of this finding, to entitle him to recover at all, appellant must, nevertheless, have shown himself ready and able to complete the contract according to its very terms. An action for specific performance may not be converted into a simple action for damages. If recovery is sought for the breach of a contract, the action must be brought at law. This being true, appellant's contention as to all other questions involved on the cross-appeal might, for the purpose of this case, be granted. We are not, however, to be understood as expressing an opinion thereon. If all parties were in default, or if appellant's contention on this issue were sustained, the result must be the same. On the other hand, if the contention of appellees on their cross-appeal should be upheld, it would furnish only an additional ground for reversal.

We have already indicated that this is not an action for rescission and to recover the portion of the purchase price paid, together with the value of the South Dakota and Wyoming property, nor is it primarily an action for damages for the breach of the contract. The question of abandonment urged by appellees presents largely a question of fact; and the conclusion reached herein makes a decision upon the principal issue urged by appellant upon his appeal unnecessary.

We have omitted reference to some matters favorable to appellant, but nothing bearing upon the decisive question in the case. Without further discussion or elaboration, we arrive at the conclusion that the decree and judgment of the court below cannot be sustained, and must, therefore, be reversed.— *Affirmed on appellant's appeal; reversed on cross-appeal.*

ARTHUR, C. J., and DE GRAFF and VERMILION, JJ., concur.