Roger L. **BAYSDEN**, Appellant,

v.

W.P. **HITCHCOCK**, Davis Marketing Company, Inc., Eisenhart & Associates of Des Moines, Inc., Davis–Eisenhart Marketing Company, Inc., and E & A Group, Ltd., Appellees.

No. 94–2010.

Court of Appeals of Iowa.

June 27, 1996.

Thomas D. Hanson and Brenda K. O'Neil of Hanson, Bjork & Russell, L.L.P., Des Moines, for appellant.

David Swinton and H. Richard Smith of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellees.

Heard by HABHAB, P.J., and HUITINK, J., and McCARTNEY, Senior Judge.*

McCARTNEY, Senior Judge.

The jury in this breach of contract action awarded the plaintiff $315,250 in damages. The trial court granted the request of the defendants for judgment notwithstanding the verdict. On appeal, the plaintiff argues: 1) the trial court erred in granting judgment notwithstanding the verdict; 2) the trial court erred in granting summary judgment on his claim for tortious interference; 3) the trial court should have granted his motion to amend; 4) the trial court should have admitted the rule 404(b) testimony of Daniel Coffey; and 5) the trial court should not have limited his request for damages to three years. We affirm, with a limited remand.

## I. Judgment Notwithstanding the Verdict.

The Plaintiff, Roger Baysden, was an employee of Davis Marketing Company, a food brokerage company. W.P. Hitchcock was the owner of the company. Hitchcock was contemplating retirement in 1991, and he and Baysden negotiated an agreement by which Hitchcock would sell Baysden his controlling interest in the business. The parties agree they entered into a contract on September 30, 1991, for the sale of the company.

* Senior judge from the Second Judicial District serving on this court by order of the Iowa Supreme Court.

To facilitate the transfer of control to Baysden, the Employee Stock Ownership Plan (ESOP) was to be liquidated. The employees were to be provided a deadline by which they were to elect how they wished to have their ESOP interests treated. The contract for the sale of the company provided in relevant part—

> Closing. The Closing of the transactions contemplated under this Agreement shall take place as soon as reasonably practicable after the close of the employees' election period as set forth in Section 3 of this Agreement.

The parties do not dispute the close of the employees' election period was November 1, 1991, and they had agreed to have the closing on that day. While both parties were present for the scheduled closing, it did not occur because Baysden became upset over "bonuses" Hitchcock was to receive from the company. The closing abruptly ended when Baysden left the meeting.[1]

Four days later, Baysden, through his legal counsel, submitted a new contract proposal to Hitchcock. This new proposal contained some substantially different terms than the original contract. Hitchcock rejected these new terms.

Baysden testified that he attempted several times after November 1 to complete the closing, but he could not get Hitchcock to commit to do it. Baysden further testified that at a November 4 meeting he wanted changes and further concessions in the contract. Baysden testified he brought up the subject of closing the sale with Hitchcock in February, March, and April 1992.

Hitchcock contradicted Baysden's version of the events and testified he and Baysden did not talk about the sale until two weeks after the aborted closing and that the discussion was about the new contract Baysden had proposed. He denied Baysden ever approached him after November 1 about closing the original sale as contracted.

Hitchcock sold his company in May 1992 to another food brokerage company, Eisenhart & Associates of Des Moines, Inc. and Baysden was then terminated from his employment.

Baysden brought suit against Hitchcock and Davis Marketing Company on a number of different grounds, but the action was tried solely on the basis of breach of contract.

The jury found Hitchcock and Davis Marketing Company had materially breached the contract with Baysden, and it found Baysden had not materially breached the contract. The trial court granted judgment notwithstanding the verdict. It concluded Baysden had materially breached the contract when he refused to close on November 1, 1991.

■ In reviewing a motion for judgment notwithstanding the verdict, we consider whether the evidence, taken in the light most favorable to the nonmoving party, shows the movant was entitled to a directed verdict at the close of all the evidence. *McGough v. Gabus*, 526 N.W.2d 328, 334 (Iowa 1995). When reviewing such a ruling, we look to see whether the evidence on an issue was sufficient to generate a jury question. *Id.*

■ A breach of contract occurs where a promisor, who had promised to do a certain act or make a specific payment, fails to do so when the time for doing such act or making such payment has occurred. *See Becker v. Central States Health and Life Co. of Omaha*, 431 N.W.2d 354, 357 (Iowa 1988), *overruled on other grounds*. A material condition which is agreed to by the parties must be fulfilled by the party bringing suit in order for such party to recover on the contract. *Taylor Enterprise, Inc. v. Clarinda Production Credit Association*, 447 N.W.2d 113, 116 (Iowa 1989).

The parties had agreed to a closing date and were contractually obligated at the time of the closing to transfer the consideration required by their contract. Baysden not only walked out on the closing failing to complete the transactions required by the contract but he then had his counsel present a new contract to Hitchcock, clearly in an effort to renegotiate what had already been agreed upon. Nonperformance of a duty

---

1. Baysden not only concedes that the receipt of the bonuses by Hitchcock was not in violation of their agreement for the sale of the company but that he was aware, weeks before the closing, that such bonuses were to be paid.

under a contract is a breach. *Metropolitan Transfer Station, Inc., v. Design Structures, Inc.*, 328 N.W.2d 532, 537 (Iowa App.1982). Baysden failed to close as required by the contract and this breach was material in nature.

While we recognize that questions of performance and breach are generally for the jury, a directed verdict may be warranted however where a party seeking recovery for breach of contract has failed to prove his performance under the contract. *See Barnett v. Burns*, 235 Iowa 1, 4–5, 15 N.W.2d 869, 870 (1944) (directed verdict affirmed in action for breach of contract where neither plaintiff nor assignor had proved they had performed contract as to justify recovery). Given the material breach of contract by Baysden, the trial court was correct in granting judgment notwithstanding the verdict.

## II. Tortious Interference

Baysden appeals the grant of summary judgment by the trial court with respect to his claim the defendants had tortiously interfered with his contract to purchase the company. He claims the defendants conspired with the various Eisenhart entities to improperly interfere with his contract.[2]

■ Generally a party to a contract cannot be held liable for tortious interference with the contract. *See Irons v. Community State Bank*, 461 N.W.2d 849, 857 (Iowa App.1990). In such cases a tort remedy is not necessary as the plaintiff has an adequate remedy for breach of contract. *Klooster v. North Iowa State Bank*, 404 N.W.2d 564, 570 (Iowa 1987). This court recognized an exception to the rule in *Tyler v. Percell*, 506 N.W.2d 805 (Iowa App.1993). In *Tyler* we held the vendor of a real estate contract could be liable in tort where he conspired with third parties to cause the plaintiff/vendee to forfeit the contract. *Id.* at 808.

■ The trial court concluded the exception found in *Tyler* did not apply in this case,

and it granted summary judgment on the tortious interference claim. Baysden argues *Tyler* should be extended to apply to his claim.

When reviewing a grant of summary judgment we consider the evidence in the entire record in the light most favorable to the non-movant and determine whether there exists any genuine issue as to any material fact. *Marcus v. Young*, 538 N.W.2d 285, 287 (Iowa 1995). We will affirm a trial court's grant of a motion for summary judgment if no issue as to any material fact exists such that the moving party is entitled to judgment as a matter of law. *Id.* We review the district court's ruling for errors of law. *Id.*

In *Tyler* the aggrieved party had no contractual remedy against the vendor because she, not the vendor, had breached the contract. *Tyler*, 506 N.W.2d at 807. She was allowed to pursue a claim of tortious interference because it was the conduct of the vendor which caused her breach. *Id.* at 808. We find no basis for extending *Tyler* to a case in which the allegedly aggrieved party has a contractual remedy. The trial court did not err in granting summary judgment.

## III. Motion for Leave to Amend

■ Baysden filed a motion for leave to amend on June 22, 1994. Among other things, he sought to add a claim alleging the defendants had aided and abetted the Eisenhart entities in tortiously interfering with an existing contract and prospective business relations. The trial court denied the motion.

Leave to amend is to be freely given when justice so requires. Iowa R.Civ.P. 88. "The trial court has considerable discretion in granting or denying a motion for leave to amend; we will reverse only when a clear abuse of discretion is shown." *Porter v. Good Eavespouting*, 505 N.W.2d 178, 180 (Iowa 1993).

The motion to amend was untimely and was filed less than two months before the

---

**2.** Throughout the proceedings Baysden made different claims of tortious interference with existing and prospective contracts. On July 15, 1994, the trial court granted summary judgment with respect to his claim against the defendants for tortious interference with the contract to pur-

chase the company. It is evident from page 34 of his appellate brief that Baysden is appealing from the tortious interference claim addressed in this ruling and not the earlier September 13, 1993, summary judgment ruling.

rescheduled trial date.[3] In his brief Baysden admits "the aiding and abetting claim, quite simply, was an effort to redirect the dismissed claim against the Eisenhart defendants to defendants Hitchcock and Davis Marketing." However, he does not distinguish how this claim could be differentiated from his tortious interference claim which was directed out on summary judgment. Furthermore, the testimony of James Eisenhart would have been critical to a defense of this claim, but Eisenhart was unavailable for the rescheduled trial date. Given these circumstances, we can find no abuse of discretion in the denial of the motion.

## IV. Testimony of Daniel Coffey

 Baysden argues the trial court erred in excluding testimony Daniel Coffey would have given about his failed negotiations with Hitchcock to buy the southern region of his business. Baysden claims this testimony was admissible as evidence of similar acts under Iowa Rule of Evidence 404(b). Evidentiary rulings under rule 404(b) are committed to the sound discretion of the trial court. *Fullmer v. Tague*, 500 N.W.2d 432, 436 (Iowa 1993).

Unlike Baysden, Coffey had not reached a binding agreement with Hitchcock. They were merely in negotiation over possible terms when Hitchcock indicated he was no longer interested and he subsequently sold the southern division of the business to Eisenhart. Coffey had no first-hand knowledge of the Baysden–Hitchcock contract nor was he present for the scheduled closing on November 1. While Coffey's testimony may have had some relevance to some of Baysden's dismissed claims, it was not particularly relevant to the claim for breach of contract. We find no abuse of discretion in the exclusion of this testimony.

## V. Damages

Baysden claims the trial court erred in limiting his recovery of damages to three years of salary, benefits, and bonuses. Given our affirmance of the judgment notwith-

standing the verdict, we need not address this issue.

We remand, however, to the trial court for determination of what, if any, attorney fees are due under the terms of the contract and for which motions were filed but not ruled upon when notice of appeal was given.

**AFFIRMED WITH LIMITED REMAND AS SET FORTH ABOVE.**

---

3. At the request of the plaintiff the trial date had twice been continued. A petition was originally filed on August 25, 1992, then dismissed and the suit was then refiled.