# IN THE COURT OF APPEALS OF IOWA

No. 23-1639
Filed January 23, 2025


**ESTATES AT WOODLAND HILLS, LLC,**
    Plaintiff-Appellee,

**vs.**

**SCOTT FAMILY PROPERTIES, LLC,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.


    A party to a real-estate contract appeals a district court judgment finding it breached the contract and ordering specific performance. **AFFIRMED.**


    Matthew Boles, Christopher Stewart, and Michael Altes of Gribble Boles Stewart & Witosky Law, Des Moines, for appellant.

    Sean M. Corpstein and Justin Sullivan of Whitfield & Eddy, P.L.C., Des Moines, for appellee.


    Heard by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

Scott Family Properties, LLC contracted to sell its real estate to the Estates at Woodland Hills, LLC with a closing set for November 13, 2020. Before the sale closed, a dispute arose over whether the contract allowed a tenant to remain on the land after closing. Three days before the closing day, Woodland Hills offered to push it to the spring, suggesting the later date would give the tenant more time to relocate and also provide better weather to start development. Scott Properties never responded. And so the closing day came and went. The next business day, Scott Properties notified Woodland Hills that failing to close on November 13 voided the contract. Woodland Hills disagreed, reaffirming its intent to purchase and requesting a mutually agreeable new closing date. Again, Scott Properties never responded. So Woodland Hills sued. And after a bench trial, the court found Scott Properties breached the contract and ordered specific performance.

Scott Properties appeals, arguing Woodland Hills repudiated the contract when it offered a new closing date and that Woodland Hills' failure to perform on November 13 relieved Scott Properties of any contract obligations after that date. But Scott Properties is incorrect on each front. Woodland Hills did not repudiate the contract—proposing a new closing date was an option expressly contemplated by the contract. And Woodland Hills could not perform on November 13 because Scott Properties failed to provide the information necessary to tender payment or otherwise close. What's more, the mutual failure to perform on November 13 kept the contract alive. So when Scott Properties later refused to perform, it breached the purchase agreement. We thus affirm the district court and award Woodland Hills appellate attorney fees.

## I.    Factual Background and Proceedings

Scott Properties is a limited liability corporation comprised of four siblings, though only two are relevant to this action—Kent Scott and Nancy Fasse.  The siblings incorporated into Scott Properties to hold and manage an eighteen-acre property in Ankeny.  In 2018, the siblings were winding up Scott Properties and listed the property for sale.  Scott, as president, oversaw the sale.  At the time, Fasse was living in a mobile home on the property.

On June 26, 2020, Scott Properties entered into a purchase agreement to sell the property to Tom Davies for $430,000.  Davies paid Scott Properties $1000 upon signing.  Davies and his business partner promptly incorporated into Woodland Hills and assigned the purchase to the company.  The agreement set a closing date of November 13, 2020, "unless changed by an amendment to the" agreement.  It also instructed that Scott Properties would give Woodland Hills possession at the time of closing.  And if "for any reason the closing is delayed," the parties "may make a separate agreement with adjustments as to the date of possession in the form of an addendum or interim occupancy agreement."

A week later, Scott Properties drafted and proposed new terms to be added to the purchase agreement, and the parties executed an addendum.  The addendum gave Scott Properties "45 days after closing to remove mobile home and cap all utilities and abandon septic."  Although Fasse was still residing in the mobile home, the language did not state a tenant would remain on the property after closing, nor did it contain any terms common to contracts with tenants, such as liability protections or a rent-back provision.  The addendum also contained a back-up-offer clause, which required Woodland Hills to "remove due diligence and

contingency" within four days "and move forward with closing within 30 days" if Scott Properties received another offer while the sale was pending.

During the summer, the parties progressed toward closing. Woodland Hills obtained a lender, appraised the property, and paid engineers to survey the land for residential development. Meanwhile, Scott Properties received another offer to buy the property—above Woodland Hills' purchase price. Per the agreement, Woodland Hills promptly removed its due-diligence contingency to preserve the sale. And neither party insisted on closing within thirty days, so the parties continued toward closing in November.

Yet in early September, Scott called Davies and accused Davies of "being in collusion" with Scott Properties' real estate agent. Scott noticed the property was no longer listed online and believed Davies and his real estate agent were conspiring to thwart back-up offers.[1] He then told Davies he would not go through with the sale. Concerned, Davies contacted Woodland Hills' attorney, Dave Nelson, who emailed Scott Properties' attorneys, Matthew Boles and Christopher Stewart, the next day. Nelson stated Woodland Hills was "ready, willing and able to close on the purchase of the property. If your client insists [on] refusing to close, [Woodland Hills] will exercise [its] remedies under the purchase agreement and Iowa law and seek specific performance of the agreement and all damages and attorney's fees." Scott Properties' attorneys did not respond.

Woodland Hills continued to work toward closing and recorded a notice of interest in the property with the Polk County Recorder's Office. Nelson followed

---

[1] Scott later learned that the listing was temporarily removed because the listing agreement had expired.

up with Scott Properties' attorneys about his prior email and attached the notice. About a week later, Boles responded that he had left a phone message, had "the abstract here at my office," and asked Nelson to call him "so we can move forward with closing on the property." Nelson forwarded the email to Davies, who responded "Great news!"

In October, Davies visited the property. Fasse was present and told Davies she had not yet made plans to relocate and was not sure what she would do with the mobile home. Fasse also believed the addendum allowed her to continue living on the property in the mobile home for forty-five days. Davies grew worried Fasse would not vacate by closing, despite the agreement giving Woodland Hills possession at the time of closing and containing no terms allowing a tenant to remain on the property.

On November 4, Stewart emailed Nelson, stating, "We understand your client may have issues with the current agreement to allow the current occupier 45 days after closing to move from the land. If so, please let us know whether your client intends on moving forward with the close." On November 10—three days before the closing date set in the contract—Nelson responded by proposing to move the closing to April 1, 2021. Nelson noted that Fasse wanted more time to move and that this later date would also let Woodland Hills to start developing in the spring when the weather was better. Scott Properties' attorneys never responded.

Closing day—Friday, November 13—came and went. Scott Properties never contacted Woodland Hills, provided the necessary closing documents (the deed, the declaration of value, or the groundwater hazard statement), or supplied

any bank account or wire information to allow Woodland Hills to tender payment. Still waiting to hear back on its offer to reschedule, Woodland Hills likewise did not contact Scott Properties that day. Neither party arranged a time or place to close.

The next Monday, Stewart emailed Nelson stating the closing date was not met and that it was "pretty clear that [Fasse] was entitled to" live on the property after closing. Scott Properties believed Woodland Hills' "failure to close on the property by November 13" was "non-performance on the agreement," and thus Scott Properties found "the agreement now void." Nelson promptly disputed that the agreement was void and suggested that, rather than litigate, the parties could "work out a mutually agreeable time to close." Scott Properties' attorneys never responded.

So Woodland Hills sued Scott Properties. The suit was eventually narrowed to one breach-of-contract claim against Scott Properties, for which it sought specific performance of the purchase agreement and attorney fees. The case went on to a bench trial and a preliminary issue was whether Boles or Stewart—who represented Scott Properties both during the underlying real estate sale and in this contract action—would testify. The attorneys disputed whether they were timely designated as witnesses, whether Woodland Hills could force attorneys to testify, and whether their testimony was necessary. The court reserved ruling and ultimately neither attorney was called to testify or offered testimony.

After a two-day trial, the district court entered judgment for Woodland Hills, finding Scott Properties "breached the contract by failing to tender its performance and preventing Woodland Hills' performance." The court reasoned that Scott Properties did not show it was ready and able to perform at closing on

November 13, as there was no evidence any of the necessary closing documents were prepared or that Scott Properties even had a bank account to receive Woodland Hills' closing payment. The court rejected Scott Properties' argument that Woodland Hills "walked out" on closing. To the contrary, it aptly found that Scott Properties "never told Woodland Hills where to 'walk to.'" And the court explained that "it is well settled that a party may not rely on a condition precedent when by its own conduct it has made compliance with that condition impossible." (Cleaned up.)

The court also held that Woodland Hills' November 10 offer to push the closing date was not a repudiation. Because repudiation occurs only when a party indicates it cannot or will not perform, and the email merely offered to extend the closing date—an option expressly contemplated by the purchase agreement—the court reasoned that the email did not relieve Scott Properties from performing. Ultimately, neither party insisted on closing on November 13, so the court held Scott Properties breached the contract when it later refused to close "or even negotiate regarding a new closing date."

As for remedies, the court ordered specific performance of the purchase agreement. Because Fasse remained on the property—long after the original closing date—the court also ruled that she could not remain on the property after closing. And because the contract provided for attorney fees, the court awarded Woodland Hills its reasonable trial-related fees.[2] Scott Properties appeals.

---

[2] Scott Properties successfully obtained summary judgment on four of Woodland Hills' five claims at summary judgment, so Woodland Hills was not awarded any fees incurred before summary judgment. Woodland Hills does not appeal the summary-judgment order or that fee ruling.

## II.     Breach of Contract

Scott Properties argues the district court erred in finding it breached the purchase agreement.  Although this was an action seeking specific performance rather than damages, both parties agree this case was tried as an action at law—not equity—and that our review is thus for correction of errors at law.  *Metro. Prop. & Cas. Ins. v. Auto-Owners Mut. Ins.*, 924 N.W.2d 833, 839 (Iowa 2019).  And so, we are bound by all factual findings supported by substantial evidence.  *Id.*

To prevail on its breach-of-contract claim, Woodlands Hills must show: (1) a contract exists, (2) the conditions and terms of that contract, (3) it performed "all the terms and conditions required under the contract," (4) Scott Properties breached the contract "in some particular way," and (5) it suffered damages from the breach.  *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).  Scott Properties focuses its challenge to the district court's judgment on the third and fourth elements.

### A.     Woodland Hills' Performance

Scott Properties disputes that Woodland Hills performed under the contract and argues that lack of performance defeats its claim.  "Before either party can sue on a real estate contract, that party must first put the other party in default by tendering or offering to tender performance."  *Passehl Est. v. Passehl*, 712 N.W.2d 408, 418 (Iowa 2006) (cleaned up).  Parties seeking specific performance must "allege and prove" that they were "ready, able, and willing to perform the covenants of the contract."  *Braig v. Fyre*, 199 N.W. 977, 979 (Iowa 1924); *see also Barnett v. Burns*, 15 N.W.2d 869, 870 (Iowa 1944) (affirming directed verdict for defendant in a breach-of-contract action when plaintiff could not show it had performed or

was "ready, willing, or able to perform the contract"). Scott Properties believes Woodland Hills failed to perform by: (1) repudiating the contract through the November 10 email proposing a new closing date, and (2) failing to tender $429,000 or otherwise close on November 13. We consider each in turn.

"A repudiation is accomplished by words or acts before the time of performance evidencing an intention to refuse to perform in the future." *Pavone v. Kirke*, 807 N.W.2d 828, 833 (Iowa 2011). It requires more than "a party's negative attitude, a party's attitude indicating more negotiations are sought, or that a party may finally perform." *Id.* Instead, "a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform." *Id.* (quoting Restatement (Second) of Contracts § 250, cmt. b (Am. L. Inst. 1981)). And when parties disagree about how to interpret a contract, "the mere demand by one party that the contract be performed according to its interpretation does not in and of itself constitute repudiation. Instead, a demand must be accompanied by a clear expression of intent not to perform under any other interpretation." *Conrad Bros. v. John Deere Ins.*, 640 N.W.2d 231, 241–42 (Iowa 2001) (internal citation omitted). If "one party to a contract repudiates the contract before the time for performance has arrived, the other party is relieved from its performance." *Id.* at 241.

Woodland Hills did not repudiate the contract through its November 10 email. The purchase agreement set November 13 as the closing date, "unless changed by an amendment." Far from discarding the contract, Woodland Hills proposed a new closing date, which the contract expressly contemplated. Indeed, the email did not contain any language signifying refusal to perform, but merely

responded to an issue by proposing a solution it viewed as favorable to both parties—Fasse would get more time to move and Woodland Hills could start developing in the spring. And to remove any doubt, Woodland Hills' phrasing proves the email was a proposed amendment, not a refusal to perform: "My client would propose that we close this transaction on or about April 1 . . . . Please let me know if this is acceptable to your client." Thus, Woodland Hills did not repudiate the agreement.

Next, Scott Properties argues that Woodland Hills failed to tender $429,000 or otherwise close on November 13. In support, Scott Properties chiefly relies on *Baysden v. Hitchcock*, 553 N.W.2d 903 (Iowa Ct App. 1996). There, parties agreed to close on a particular day, but while they were together for the closing, the buyer walked out and refused to continue. *Id.* at 903. After walking out, the buyer unsuccessfully tried to revive the sale with new terms. *Id.* The buyer later sued for breach and the district court found for the seller. *Id.* Our court affirmed, explaining the buyer "not only walked out on the closing failing to complete the transactions required by the contract but he then had his counsel present a new contract to [the seller], clearly in an effort to renegotiate what had already been agreed upon." *Id.* Thus, the buyer's failure to close was a material breach, which precluded his recovery in a breach-of-contract action. *Id.* at 904.

We find this case distinguishable. For starters, Woodland Hills did not literally or figuratively walk out on closing—the November 10 email did not repudiate the contract or otherwise renounce Woodland Hills' intent to perform. And Woodland Hills proved at trial it had the funds and intended to purchase the property. Further, what doomed closing was not Woodland Hills proposing a new

date ahead of closing, but Scott Properties' mistaken belief that it was relieved of performing after the November 10 email. Indeed, Scott Properties concedes that it stopped communicating after it deemed the November 10 email a repudiation, asserting the parties would have arranged for closing had Woodland Hills "not revealed its intent [to breach] to Scott Properties."

A party "acts at its peril" when it "refuses to perform its duty" based on an erroneous understanding of its rights. *Conrad*, 640 N.W.2d at 241 (cleaned up). And Scott Properties' choice to abandon performing after November 10 had consequences—the district court found Scott Properties' failure to provide Woodland Hills with payment instructions made Woodland Hills' closing performance impossible. *See Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 678–701 (Iowa 2020) (ordering specific performance of purchase agreement after seller tried to back out, stopped responding to requests for necessary closing documents, and never provided wire information because, *inter alia*, the seller's "own actions—or lack thereof—prevented [the buyer] from tendering payment" so the seller "could not equitably claim that [the buyer's] failure to actually pay him on the closing date meant [the buyer] was not ready, willing, and able or did not perform").

On appeal, Scott Properties offers nothing to undermine that finding. It does not show that it had a bank account where funds could have been sent, does not argue it would have accepted a different form of payment, points to no evidence that all closing documents were prepared, and identifies no other facts suggesting Woodland Hills could have independently performed on November 13. Thus,

Woodland Hills' failure to tender payment or otherwise close on November 13 was excused and does not defeat its claim.

## B.    Scott Properties' Breach

Turning to the fourth element, the district court found Scott Properties never responded to Woodland Hills' offer to insist on closing November 13, never prepared the necessary closing documents, and refused to close "or even negotiate regarding a new closing date."  And because neither party insisted on closing on November 13, Scott Properties' later refusal to close breached the purchase agreement.  On appeal, Scott Properties blames its nonperformance on Woodland Hills, arguing it was prepared to close but the November 10 email telegraphed Woodland Hills' "intent not to close" and "made [Scott Properties'] providing of [closing] documentation and information impossible."  We disagree.

As for Scott Properties' preparedness, Scott confirmed during trial that he was unaware of the steps Scott Properties took to ensure closing could occur on November 13.  Neither he nor any other member of Scott Properties ever signed a deed.  He had no knowledge of his attorneys ever preparing the groundwater hazard statement, declaration of value, or the deed.  He was unsure whether Scott Properties had a bank account to receive payment from Woodland Hills—at first testifying Scott Properties did not have a bank account, then clarifying that it had one "for a while" for estate costs after the siblings' mother passed away, though he did not know whether that account still existed on November 13.  Fasse also did not recall Scott Properties having a bank account at that time.  Scott clarified that his only responsibility was "getting the abstract up to date," which he accomplished in September.  Beyond that, he believed his attorneys were handling

everything for the closing. And those attorneys never testified about the steps they took to uphold Scott Properties' closing obligations.

As for Woodland Hills' role, Scott Properties again points to the November 10 email and failure to tender payment. But that email did not repudiate the contract or telegraph intent to breach. And Woodland Hills was excused from paying on November 13 because Scott Properties made it impossible. So neither event relieved Scott Properties of its obligation to close this sale.

Scott Properties makes much of the fact that closing did not occur on November 13 and asserts the district court should not have faulted it for not providing documents that are ordinarily provided at closing. But Scott Properties misunderstands when it breached the agreement. The contract allowed the parties to agree to reschedule closing, it never responded to Woodland Hills' offer to reschedule by insisting on closing on November 13, and neither party performed that day. "In a real estate transaction, the law contemplates that each party will only relinquish their tight grip on their money or deed once they have their other hand firmly planted on the other party's money or deed; therefore, the law generally requires simultaneous performance." *Passehl Est.*, 712 N.W.2d at 417–18. And when a real-estate contract provides for "mutual and simultaneous" obligations, "the failure of both [parties] to tender performance at the time fixed in the contract saves the default of each, and keeps the contract alive. In such circumstances either [party] may put the other in default by a tender of performance within a reasonable time." *Braig*, 199 N.W. at 979 (internal citations omitted).

Because neither party performed the mutual and simultaneous obligations on November 13, the contract was still alive. Yet the next business day, Scott

Properties refused to perform. With that refusal, Scott Properties breached. Thus, we affirm the district court's judgment.

### III.  Attorney Fees

Finally, Woodland Hills asks for an award of $26,207.50 in appellate attorney fees and costs. The purchase agreement provided Scott Properties would "pay costs and reasonable attorney fees" should it fail to fulfill the agreement. Despite this language, Scott Properties resists Woodland Hills's request, arguing that because the agreement is silent on appellate attorney fees, we lack authority to award them. Not so. *See* Iowa Code § 625.22(1) (2021) ("When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court."); *Bankers Tr. Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982) (awarding appellate attorney fees under Iowa Code section 625.22 when "the written agreement provided for attorney fees and in no way limited them to costs in the trial court"). Woodland Hills prevailed in this appeal and under the contract and the statute, it is entitled to an award of appellate attorney fees. Upon our review of Woodland Hills' attorney-fee affidavit, we award $16,400 in attorney fees for this appeal.

**AFFIRMED.**