# IN THE COURT OF APPEALS OF IOWA

No. 23-1085
Filed February 19, 2025

**LABOR FORCE, INC.,**
　　Plaintiff-Appellee,

**vs.**

**ACTIVE THERMAL CONCEPTS, INC., and ACTIVE HOLDINGS GROUP, INC.,**
　　Defendants-Appellants.
_____

　　Appeal from the Iowa District Court for Scott County, Mark J. Smith, Judge.


　　Two companies appeal a summary-judgment ruling finding that they breached a contract. **AFFIRMED.**


　　John G. Daufeldt and John C. Wagner of John C. Wagner Law Offices, P.C., Amana, for appellants.

　　Paul J. Bieber of Gomez May, LLP, Davenport, for appellee.


　　Considered by Badding, P.J., Langholz, J., and Bower, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**LANGHOLZ, Judge.**

Active Thermal Concepts, Inc. and Active Holdings Group, Inc. (collectively, "Active") are two interior demolition companies that provide identical services in different geographical areas. They have common shareholders, share staff, and have the same operating manager. In 2017, Active Thermal contracted with Labor Force, Inc., a company that provides temporary employees. Although the contract only listed Active Thermal and Labor Force as the parties, all agree Labor Force also provided Active Holdings with temporary employees and that Active Holdings received and paid invoices for those employees. When Active Thermal and Active Holdings fell behind on payments, Labor Force sued each company for breach of contract. The cases were consolidated and the parties filed competing motions for summary judgment. The court granted Labor Force's motion and the case proceeded to a bench trial on the amount of damages. Now, Active appeals the summary-judgment ruling, arguing its motion should have been granted and Labor Force's motion should have been denied.

Active's disputes over the form of Labor Force's filings lack merit—Labor Force's motion was timely, it contained a statement of undisputed facts, and any failure by Labor Force to expressly specify which of Active's facts it was disputing in resistance to Active's competing motion did not require the court to grant Active's motion. So too do Active's substantive arguments fail—the summary-judgment evidence showed the parties intended for the contract to include services to Active Holdings, Labor Force substantially performed its contractual duties to the extent possible, and Labor Force incurred damages from Active's breach. We thus affirm the district court's grant of summary judgment to Labor Force.

## I.    Background Facts and Proceedings

Labor Force is an Iowa corporation that provides temporary employee services.  Labor Force hires employees and then assigns them to customers who need temporary workers.  Kent Knickelbein is the sole shareholder of Labor Force.

Active Thermal and Active Holdings are Iowa companies that provide interior demolition services.  Both companies perform asbestos, mold, and lead remediation; water and fire restoration; and structural demolition.  The companies share three of four shareholders, share a bookkeeper and office manager, and Cory Albers served as the operating manager for both companies.  Other than the one different shareholder of each company, the main difference between the companies is geography—Active Thermal works in Iowa and north of Springfield, Illinois; Active Holdings operates in St. Louis, Missouri, south of Springfield, Illinois, and "hold[s] a U.S. Coast Guard contract that can take [it] anywhere."

In March 2017, Active Thermal entered a written agreement to receive temporary employees from Labor Force.  Under the agreement, Active Thermal would receive "Temp Employees," who would remain employees of Labor Force while performing services for Active Thermal.  Labor Force agreed to provide workers' compensation coverage for the temporary employees "as required by the laws of the jurisdiction in which the services are performed."  And the agreement required Active Thermal to pay all invoices "upon receipt."

Knickelbein testified in his deposition that while there was no separate agreement with Active Holdings, Labor Force viewed Active Holdings as "a subsidiary" of Active Thermal.  And so Labor Force also provided temporary employees to Active Holdings in Missouri.  Albers agreed that Labor Force also

provided Active Holdings with temporary employees, and that Active Holdings received and paid invoices to Labor Force for those employees.

Over time, both Active Thermal and Active Holdings fell behind on payments to Labor Force. So Labor Force filed separate suits against each company seeking to recoup those payments—claiming Active Thermal owed roughly $413,000 and Active Holdings owed about $40,000. The cases were consolidated and both parties later filed competing motions for summary judgment. Active Holdings alleged it never contracted with Labor Force, so Labor Force could not sue for breach. And Active Thermal asserted that Labor Force failed to perform by not maintaining workers' compensation coverage and that Labor Force could not show damages because the parties altered the contract to modify when payments were due. Labor Force, conversely, argued that the agreement included services for Active Holdings, it performed all material obligations under the contract, and it was undisputed that both Active Holdings and Active Thermal failed to pay invoices upon receipt as required by the contract.

The district court granted Labor Force's motion and denied Active's motion, reasoning that Labor Force proved the agreement included both Active Thermal and Active Holdings, that any lack of performance by Labor Force was immaterial or impossible, the parties did not modify the requirement to make payments upon receipt of invoices, and thus Active was in breach. After Active unsuccessfully tried to immediately appeal this interlocutory ruling, *see Labor Force, Inc. v. Active Thermal Concepts, Inc.*, No. 23-0674 (Iowa May 2, 2023), the case proceeded to a one-day bench trial on the amount of damages. The court then entered judgment

for Labor Force and ordered Active Thermal to pay $413,532.40 and Active Holdings to pay $40,385.39 in damages.

Active now appeals again, challenging only the summary judgment rulings. *See* Iowa R. App. P. 6.101(1)(d) ("An order disposing of some but not all of the . . . issues in an action may be appealed within the time for appealing from the judgment that finally disposes of all remaining . . . issues to an action, even if . . . the issues are severable."); Iowa R. App. P. 6.103(4) ("Error in an interlocutory order is not waived by . . . proceeding to trial.").

## II.       Summary Judgment on Breach-of-Contract Claims

Active argues the district court erred in granting Labor Force's summary-judgment motion because Labor Force's motion: (1) was untimely, (2) omitted required information, (3) did not specifically dispute Active's facts, (4) never proved a contract existed between it and Active Holdings, (5) failed to show it performed under the contract, and (6) did not substantiate its claim for damages.  Reviewing for correction of errors at law, *see UE Loc. 893/IUP v. State*, 997 N.W.2d 1, 8 (Iowa 2023), we consider each in turn.

### A.       Arguments of Form

*Timeliness.*  Active first argues that the district court should have denied Labor's summary-judgment motion outright because it was filed too late.  After the cases were consolidated, a bench trial was scheduled for January 17, 2023.  The parties' trial scheduling and discovery plan required the parties to file summary-judgment motions "at least 60 days before trial."  And if that trial date were later continued, the plan provided "all time deadlines" would "remain in effect relative to the new trial date unless the court approves new deadlines."  This was consistent

with the summary-judgment deadline set by our rules of civil procedure. *See* Iowa R. Civ. P. 1.981(3) ("The motion shall be filed not less than 60 days prior to the date the case is set for trial, unless otherwise ordered by the court.").

Shortly before the January trial date—at Active's request—the court continued the trial to May 4. So under the trial scheduling and discovery plan, the summary-judgment deadline became sixty days before that new trial date. And four days after the court continued the trial—107 days before the new May trial date—Labor Force moved for summary judgment. Thus, Labor Force's motion was timely and Active's effort to enforce the prior, superseded deadline fails.

*Completeness.* Active next argues that Labor Force's motion for summary judgment should not have been considered because it did not contain a separate statement of material facts, as required by our rules of civil procedure. *See* Iowa R. Civ. P. 1.981(8) (stating parties "shall" attach a "separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried" to summary-judgment motions). Yet Labor Force filed a statement of undisputed facts when resisting Active's motion, and its summary-judgment motion incorporated its resistance filings by reference. And, in any event, "the failure of counsel to annex a statement of undisputed facts and a memorandum of supporting authorities to his or her motion for summary judgment does not affect a court's authority to rule on the motion." *Toomer v. Iowa Dep't of Job Serv.*, 340 N.W.2d 594, 597–98 (Iowa 1983) (explaining that while the rule's use of "shall" makes the requirement mandatory for counsel, failing to attach a statement of undisputed facts "does not strip the court of authority to rule on such

a motion" if the court decides to consider the motion "without the 'assistance'" of that statement).

*Disputing Active's Facts.* Active also argues that, when resisting Active's summary-judgment motion, Labor Force's statement of facts did not separately indicate which of Active's facts it was disputing. And Active reasons that, because Labor Force did not specifically dispute any of Active's facts, that failure alone required the court to grant Active's competing summary-judgment motion. Not so. Summary judgment is warranted only when the moving party shows it "is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "The burden of showing undisputed facts entitling the moving party to summary judgment . . . remains with the moving party at all times." *Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 496 (Iowa 2019); *see also Am. Tel. & Tel. Co. v. Dubuque Commc'ns Corp.*, 231 N.W.2d 12, 14 (Iowa 1975) ("While failure to adequately resist a motion for summary judgment is a dangerous course for defendant to take, it becomes fatal only if the summary judgment movant has met the burden of proof imposed upon it . . . ."). Thus, Active was not entitled to judgment as a matter of law merely because Labor Force's resistance did not expressly identify which of Active's facts it was disputing—the court must always assess whether the moving party met its legal burden, regardless of the existence or vigor of the opposing party's resistance.[1]

---

[1] Active makes a similar argument on appeal, asserting Labor Force's scant briefing alone requires reversal. But as appellee, Labor Force was not required to file a brief at all. *See* Iowa. R. App. P. 6.903(3). Active, as the appellant, carries the burden to overturn the underlying judgment. *See King v. State*, 818 N.W.2d 1, 11–12 (Iowa 2012).

**B.      Arguments of Substance**

*Contract Between Labor Force and Active Holdings.*  Turning to the merits, Active argues summary judgment was improper because Labor Force did not prove it contracted with Active *Holdings* rather than only Active *Thermal*.  Active is correct that a plaintiff cannot prevail in a breach-of-contract action without first showing that a contract existed.  *See Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).  But executed contracts can later be modified or expanded, provided the alterations "hav[e] the essential elements of a binding contract."  *Seneca Waste Solutions, Inc. v. Sheaffer Mfg. Co.*, 791 N.W.2d 407, 412 (Iowa 2010).  Mutual assent to modify a contract may be "either express or implied from acts and conduct," though showing an implied modification requires more than pointing to "loose and random conversations."  *Passehl Est. v. Passehl*, 712 N.W.2d 408, 417 (Iowa 2006) (cleaned up).

We agree with the district court that Labor Force carried its burden to show from the undisputed facts that the agreement included providing temporary workers to Active Holdings.  First, Albers's deposition testimony shows Active Holdings intended to be a party to the contract.  He explained the shared staff of Active Holdings and Active Thermal would receive invoices from Labor Force and maintain a spreadsheet showing "this much attributable to Active Holdings, this much attributable to Active Thermal.  And it would get booked that way internally in the two companies."  Although he could not recall "who owed what at that time," and did not "know if it was at that time that Active Thermal had the balance or Active Holdings had the balance or it was proportional," Albers knew Labor Force was still owed payments.  Indeed, Albers even clarified he did not "dispute the total

global amount that's due" but only disputed "who it's attributed to." So to now allow Active Holdings to have intended to contract with Labor Force, receive the benefits of Labor Force's temporary employees, but avoid paying for those benefits, would result in unjust enrichment. *Cf. State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 151 (Iowa 2001) (discussing a mistaken expression within a contract and when "reformation is needed to give effect to the intention of the parties and to prevent unjust enrichment," because "[w]ithout reformation, the party benefited by this mistake would receive a benefit not provided for under the agreement which the written contract was meant to express").

And second, as discussed below, Active disputes that Labor Force fully performed under the contract because it failed to provide workers' compensation coverage to temporary workers in Missouri. Yet Active Thermal does not operate in Missouri—only Iowa and Illinois. Active Holdings, conversely, operates in Missouri. So, like the district court, we struggle with Active's seemingly incongruous position—that Labor Force was contractually required to insure employees working with Active Holdings in Missouri yet no contract existed between those parties. Thus, we find the district court correctly held the contract included providing services to Active Holdings.

*Labor Force's Performance.* Active next argues that Labor Force cannot sue for breach because it failed to perform its duties under the agreement. Active alleges Labor Force was required to maintain workers' compensation coverage for all temporary workers and it failed to do so. But we find Labor Force substantially performed and any nonperformance is excused.

"A material condition which is agreed to by the parties must be fulfilled by the party bringing suit in order for such party to recover on the contract." *Baysden v. Hitchcock*, 553 N.W.2d 901, 903 (Iowa Ct. App. 1996). But if the other party made performing impossible, then such nonperformance is excused. *Homeland Energy Sols., LLC. v. Retterath*, 938 N.W.2d 664, 700 (Iowa 2020); *see also* 17B C.J.S. *Contracts* § 709 (2024).

As part of its summary-judgment papers, Labor Force offered an affidavit from its workers' compensation insurance carrier. There, the insurance agent swore Labor Force obtained workers' compensation coverage for "Temporary and/or Leased Employees from Labor Force, Inc. providing services to Active Thermal Concepts, Inc. and Active Holding Group, Inc., among others, in the states of Iowa and Illinois." The agent clarified that Labor Force's policy did not cover temporary workers in Missouri, but only because Missouri required specific information from the entity receiving the workers, and "Labor Force Inc. attempted to obtain this information [from Active Holdings] but was unsuccessful."

Active offered no evidence to rebut this affidavit. Instead, it merely argues for a more limited reading of the policy. But Active's proposed reading is foreclosed by the insurance carrier's affidavit stating Labor Force indeed maintained coverage all temporary workers assigned to Active in Illinois and Iowa. And Active never contested that it failed to provide Labor Force with the information necessary to obtain Missouri coverage. So, under this summary-judgment record, the district court properly found Labor Force performed its duties to the extent possible.

*Damages.* Finally, Active argues that Labor Force failed to show it has suffered any damages because the parties agreed to modify when payments were

due under the contract. According to Active, the parties' course of conduct required Active to pay Labor Force not when it received an invoice, but only when Active was paid by its own customers for a job where Labor Force's temporary employees were used. So if a customer was late paying or did not pay for a job, then Active too would be late paying or would not pay Labor Force for the employees. And because there are jobs for which Active has not been paid, Labor Force has no damages because it has no expectation of payment.

Again, modifications are permitted when those alterations "hav[e] the essential elements of a binding contract." *Seneca Waste Sols.*, 791 N.W.2d at 412. Yet unlike the parties' intent to also provide temporary employees to Active Holdings, we find no similarly clear evidence showing a mutual intent to modify the term requiring Active to pay invoices upon receipt. To support its modification argument, Active exclusively relies on an affidavit by its own accounting specialist. But that affidavit does not show the necessary elements of a binding contract—it only states that Active would pay Labor Force after being paid by its customer, and if the customer did not pay, then Active "was unable to pay Labor Force." Whether Active had adequate funds to pay Labor Force at a given time is separate from its contractual duty to pay upon receipt. And at best, it would be evidence only of Active's unilateral intent when a contract requires "*mutual* intent" not "some secret, undisclosed intention [a party] may have had in mind, or which occurred to them later." *Peak v. Adams*, 799 N.W.2d 535, 544 (Iowa 2011) (cleaned up). What's more, the position is further foreclosed by Albers's deposition testimony admitting the "total global amount" was in fact owed to Labor Force.

So unlike cases where the suing party affirmatively granted many extensions to contractual deadlines, *see, e.g.*, *Crown Colony, Inc. v. Iowa Rural Water Ass'n,* No. 00-2039, 2002 WL 531512, at *1–3 (Iowa Ct. App. Mar. 27, 2002), Active has shown no affirmative conduct or other clear intent by Labor Force to waive its material right to payment under the contract. Active has shown at most a history of late payments and inability to pay. Without more, the district court correctly found Labor Force proved it was owed Active's unpaid balances and thus suffered damages from Active's breach.

**AFFIRMED.**